GREGORY J. LIOCE, Appellant, *v.* DANA S. COHEN; MORRY COHEN; and JOHN C. WILSON, Respondents.

No. 44458

TIFFANY LANG, Individually and as Guardian ad Litem of ALICIA P. LANG, a Minor; and JOSEPH LANG, Individually, Appellants, *v.* JENNIFER KNIPPENBERG, Respondent.

No. 44823

LUIS CASTRO, Appellant, *v.* VANESSA CABRERA; and SYLVIA CABRERA, as the Natural Parent and Legal Guardian of GABRIEL CABRERA, a Minor, and NICHOLAS CABRERA, a Minor, Respondents.

No. 45331

JAMES SEASHOLTZ, Appellant, *v.* LINDSAY WHEELER, Respondent.

No. 45405

January 17, 2008                                                    174 P.3d 970

*George T. Bochanis*, Las Vegas, for Appellants Tiffany and Joseph Lang.

*Edward S. Coleman*, Henderson, for Appellant Lioce.

*Emerson & Manke, LLP*, and *Phillip R. Emerson*, Henderson; *Lemons Grundy & Eisenberg* and *Robert L. Eisenberg*, Reno, for Appellants Castro and Seasholtz and for Respondents Wilson and Knippenberg.

*Dennett Winspear, LLP*, and *Ryan L. Dennett*, Las Vegas, for Respondents Dana and Morry Cohen.

*Chad M. Golightly*, Las Vegas; *Andrew M. Leavitt*, Las Vegas, for Respondents Vanessa and Sylvia Cabrera.

*John F. Kirsch*, Reno, for Respondent Wheeler.

*Burris, Thomas & Springberg, P.C.*, and *Andrew J. Thomas*, Las Vegas; *Galloway & Jensen* and *Robert R. Jensen*, Reno; *Matthew L. Sharp*, Reno, for Amicus Curiae Nevada Trial Lawyers Association.

*Robison Belaustegui Sharp & Low* and *Jennifer L. Baker* and *Barry L. Breslow*, Reno, for Amicus Curiae Nevada Association of Defense Counsel.

Before the Court EN BANC.[1]

---

[1]THE HONORABLE NANCY M. SAITTA, Justice, voluntarily recused herself from participation in the decision of this matter.

# OPINION

By the Court, HARDESTY, J.:

## INTRODUCTION

On December 28, 2006, this court issued an opinion in these consolidated appeals.[2] The defendants in each of the four underlying personal injury cases were represented by the same attorney, who gave substantially the same closing argument on behalf of his clients at each trial. Asserting that defense counsel's closing arguments constituted misconduct, the plaintiffs sought new trials, with varying success.

In that opinion, we revised the standards under which district courts are to evaluate requests for new trials based on attorney misconduct. Next, we reversed the denial of the motions for new trials in *Lioce v. Cohen* and *Lang v. Knippenberg*, and affirmed the grant of new trials in *Castro v. Cabrera* and *Seasholtz v. Wheeler*. Additionally, we determined that the defendants' attorney's closing arguments in *Castro* and *Seasholtz* amounted to misconduct, and we remanded those cases with instructions to the district courts to calculate and impose monetary sanctions on defense counsel and his clients.[3] Finally, we referred defense counsel to the State Bar of Nevada for disciplinary proceedings. This petition for rehearing followed. Having considered the petition, answers, amici curiae briefs, and the replies, we conclude that en banc rehearing is warranted in part under NRAP 40(c). We therefore grant the petition in part, vacate our prior opinion in this matter, and issue this opinion in its place. On rehearing, we reach substantially the same conclusion as in our prior opinion, but we decline to impose monetary sanctions on defense counsel and his clients.

Because defense counsel's closing arguments encouraged the jurors to look beyond the law and the relevant facts in deciding the cases before them, we agree that they amounted to misconduct. In determining whether the district courts properly decided that this misconduct warranted new trials or not, we take the opportunity to revise our attorney misconduct jurisprudence. New trial requests based on attorney misconduct must be evaluated differently depending upon whether counsel objected to the misconduct during trial. When a party successfully objects to the misconduct, the district court may grant a subsequent motion for a new trial if the moving party demonstrates that the misconduct's harmful effect

---

[2]*Lioce v. Cohen*, 122 Nev. 1377, 149 P.3d 916 (2006).

[3]*Id.* at 1402, 149 P.3d at 932. JUSTICE PARRAGUIRRE dissented as to the sanctions in the *Castro* and *Seasholtz* cases. *Id.* (PARRAGUIRRE, J., dissenting in part).

could not be removed through any sustained objection and admonishment. With respect to unobjected-to misconduct, we conclude that the district court may grant a motion for a new trial only if the misconduct amounted to plain error, so that absent the misconduct, the verdict would have been different. When ruling on a motion for a new trial based on attorney misconduct, district courts must make express factual findings, applying the above standards.

In these consolidated appeals, we conclude that in *Castro* and *Seasholtz*, the district courts did not abuse their discretion by granting the plaintiffs' motions for a new trial, and therefore, we affirm the district courts' orders in those matters. In *Lang* and *Lioce*, however, we are unable to ascertain from the record whether the district courts abused their discretion in denying the plaintiffs' motions for a new trial. Accordingly, we vacate those orders and remand those two matters for a new decision on the new trial motions, based on the standards announced today. In addition, we refer defense counsel to the State Bar of Nevada.

## FACTS

These four appeals involve substantially the same closing argument given in each case by Phillip Emerson, the defendants' attorney. The cases are presented below in chronological order based on the date of the jury trial: (1) *Castro* (July 2004), (2) *Lioce* (September 2004), (3) *Lang* (October 2004), and (4) *Seasholtz* (November 2004). This chronology shows how Emerson's closing argument developed over time.

### Castro v. Cabrera (Docket No. 45331)

This case arose from an automobile accident, in which appellant Luis Castro rear-ended respondents Gabriel and Nicholas Cabrera's vehicle. Police cited Castro for causing the accident. The Cabreras then sued Castro, alleging that they were injured in the accident. Castro retained Emerson to defend against the Cabreras' claims.

The parties attended the court-annexed mandatory nonbinding arbitration program, and because Castro paid his citation without protest, he informally stipulated to his liability for the accident.[4] The arbitrator found in the Cabreras' favor and awarded them damages.

After the arbitration award was rendered, Castro sought a trial de novo, arguing that he was not liable for the accident because the

---

[4]Payment of a misdemeanor traffic citation is not conclusive evidence of civil liability. *See Langon v. Matamoros*, 121 Nev. 142, 144-45, 111 P.3d 1077, 1078-79 (2005) (concluding that NRS 41.133, which allows a judgment of conviction to conclusively establish civil liability for a crime, does not apply to misdemeanor traffic offenses).

sudden emergency doctrine applied. Castro contended that, under that doctrine, he was not negligent because another vehicle suddenly entered his traffic lane, which caused him to then veer into the Cabreras' traffic lane to avoid being hit.

At trial, during closing argument, Emerson argued that the Cabreras had wasted the jurors' time and the taxpayers' money. Emerson said, ''Ladies and gentlemen, at some time, at some point we must say, enough is enough. People must take responsibility for their lives and not blame others for challenges and setbacks. People must stop wasting taxpayers' money and jurors' valuable time on cases like this.'' Emerson also stated that the Cabreras' case was frivolous and that cases like the Cabreras' were responsible for the decline of the legal profession's reputation. Specifically, Emerson argued:

> I also want to apologize if any of you thought that I was overzealous at times during this trial or if any of my remarks or examinations of the witnesses offended. If I offended you, I sincerely apologize. That was not my intention. But, you see, this is a case where the plaintiffs are trying to get something for nothing. You're probably wondering why I've spent so much time and energy on defending this case. It's not a big case. It's not a million-dollar case. You're not going to hear about this in the paper.

> But, you see, I have a real passion for this kind of case. It's cases like this that make people skeptical and distrustful of lawyers and their clients who bring these type of lawsuits. It's a big factor as to why our profession is not as honorable in the eyes of the public as it once was. But the only way that people and their chiropractors will stop bringing these cases is if juries start saying no, enough is enough. Our legal process is meant to justly compensate and make one whole, not to make them rich.

The Cabreras did not object to the above statements. Following trial, the jury found in Castro's favor. The Cabreras moved for a new trial, arguing that Castro's attorney, Emerson, had committed attorney misconduct during his closing argument.

When addressing the Cabreras' motion for a new trial, the district court found that Emerson's closing argument constituted misconduct and that, cumulatively, the misconduct permeated the entire proceedings, requiring a new trial. In discussing Emerson's misconduct, the district court specifically referenced Emerson's statements regarding ''these type of cases'' and the fact that Emerson gave a ''personal opinion as to the justness of the case.'' Castro appeals, arguing that the district court abused its discretion by granting a new trial.

*Lioce v. Cohen (Docket No. 44458)*

This case involved a multi-vehicle traffic accident, after which appellant Gregory Lioce sued respondents Dana Cohen and John Wilson for injuries he sustained in the accident. Wilson retained Emerson to defend him against Lioce's suit.

At trial, the parties disputed how the accident occurred and who was at fault. Lioce stated that he was traveling eastbound down a Las Vegas street when respondent Dana Cohen turned left into his vehicle. Cohen, however, testified that Lioce changed lanes and hit her vehicle. According to Cohen, when Lioce's vehicle came to rest following the collision with her vehicle, Lioce was then rear-ended by Wilson. Wilson testified that he was not negligent because another vehicle cut in front of him and he swerved, hitting Lioce's vehicle.

During closing argument, Emerson argued, as he did in *Castro*, that Lioce was wasting taxpayers' money and jurors' valuable time. Emerson expanded that argument, however, and said:

> Ladies and gentlemen, at some time, at some point in time, we must say enough is enough. People must accept responsibility for their lives and their actions and not blame others for life's challenges and setbacks.
>
> . . . .
>
> You see, under our system of justice, each plaintiff must prove that he or she is injured. They cannot just say it and receive money. The buck stops here with you, ladies and gentlemen. You are in the position to say enough is enough.

Emerson later continued with his *Castro* argument, discussing frivolous lawsuits and the public's dim view of the legal profession. Emerson again expanded the argument, saying:

> You are probably wondering why I spent so much time and energy defending this case. It's not a high profile case. You are not going to see it on the news. You are not even going to see it in the paper.
>
> But, you see, I have a real passion for cases like this, because it's cases like this that make people skeptical and distrustful of lawyers and their clients who bring personal injury lawsuits. And it's a big factor as to why our profession is not as honorable a profession as it once was in the eyes of the public.
>
> But the only way that people and their lawyers will stop bringing cases like this is if juries start saying: No. Enough is enough.
>
> It has always been said that the American jury system is the conscience of our society; that when a jury speaks through its

verdict, it's a reflection of society's values and beliefs and what justice is or should be.

This jury, you, have a tremendous responsibility here. Like I said, it's not a high profile case, but your responsibility here is no less. You have the opportunity here with your verdict to say enough is enough.

Lioce did not object to the above statements.

Following a two-day trial, the jury found for Cohen and Wilson. Lioce moved for a directed verdict or, in the alternative, a new trial based on attorney misconduct. The district court denied both motions, without providing any reasons for the order, and the hearing on the motions was not reported. Lioce appeals, arguing that a new trial was warranted because of Emerson's misconduct during closing argument.

### Lang v. Knippenberg (Docket No. 44823)

This case arose when appellants Tiffany and Joseph Lang's nine-month-old daughter's facial area was injured by respondent Jennifer Knippenberg's large dog while she was under Knippenberg's care. After their daughter underwent surgery to repair her tear duct, the Langs sued Knippenberg, alleging that she was negligent. Knippenberg hired Emerson to defend her and argued that she was not negligent because the dog attack was an accident. At trial, the parties submitted evidence supporting their respective views, which indicated that the Lang's daughter was either bitten or scratched by Knippenberg's dog.

During closing argument, Knippenberg's attorney, Emerson, argued that the Langs' case wasted taxpayer and juror resources. He said, "At some point in time we must say enough is enough. People must stop wasting taxpayer's money and jurors['] valuable time on cases like this one." The Langs objected to this statement, and the district court sustained the objection, but made no specific admonishment concerning the misconduct.

Continuing with his theory from *Castro* and *Lioce* that personal injury cases are generally frivolous, however, Emerson then said:

I must confess, this case, you know, you're probably wondering why I spent so much time and energy defending this case. I mean, it's not a high-profile case. You're not going to see this on the 6:00 o'clock news. You're not going to read about it in the paper. But you see, I have a real passion for this case and cases like it, because it's cases like this that make people skeptical and distrustful of lawyers and their clients who bring legitimate personal injury lawsuits.

And it's a big factor as to why our profession is not as honorable a profession as it once was in the eyes of the public.

The Langs again objected to Emerson's comments, and the district court sustained their objection, but made no specific admonishment concerning the misconduct.

Nevertheless, Emerson continued with his *Castro* and *Lioce* arguments, further expanding them. He said:

> Ladies and gentlemen, life for all of us is full of ups and downs, successes and failures, achievements and setbacks, the difference is that most of us, most of us accept our problems, without trying to blame someone else.
>
> Accidents, things just happen, TMJ [Temporomandibular Joint Dysfunction], growth disturbance, hereditary issues, we take responsibility for our own lives instead of looking for an excuse to sue someone at the drop of a hat. There is a conventional school of thought prevalent now that Americans have become a society of blamers.

Once again, the Langs objected, and the district court sustained the objection, without any additional admonishment.

Emerson then argued:

> You send your son or your daughter over to a slumber party and they're running around, maybe there's a pool in the backyard, running around, opening closing the slider, playing tag, something happens. One of them runs into the slider or shut[s] the door and hurts one of the other boy's fingers, is that an opportunity, does that mean you just go out and sue— negligence. It's an accident. If this is not an incident [sic], what is[?]

The Langs did not object after this comment.

After the closing argument concluded, the Langs moved for a mistrial, asserting that Emerson's closing argument on behalf of Knippenberg was prejudicial misconduct. The district court denied their request, finding that because the Langs had objected to Emerson's improper statements and their objections were sustained, a mistrial was unwarranted.

The jury found in Knippenberg's favor. The Langs then moved for a new trial, arguing again that Emerson had committed misconduct during his closing argument that resulted in a jury verdict based on passion or prejudice. The district court denied the Langs' motion, stating that it was "unable to discern from the few portions of the transcript of argument provided that the improprieties reflected therein permeated the proceedings to the extent that a new trial would be warranted under . . . *Barrett v. Baird*[5] and *DeJesus v. Flick*.[6]" The Langs appeal.

---

[5] 111 Nev. 1496, 908 P.2d 689 (1995).

[6] 116 Nev. 812, 7 P.3d 459 (2000).

*Seasholtz v. Wheeler (Docket No. 45405)*

This case involved a motor vehicle accident in Reno, Nevada. Appellant James Seasholtz was driving, and respondent Lindsay Wheeler was his passenger, when the front of Seasholtz's vehicle collided with another vehicle. As a result of the accident, Wheeler reported feeling immediate pain in her arm, shoulder, hand, and neck, and she eventually sought medical treatment with two physiatrists,[7] two chiropractors, and a physical therapist. In all, Wheeler incurred approximately $13,632 in medical bills, $9,598 of which was from her chiropractic treatment.

Wheeler eventually filed suit against Seasholtz, alleging that her injuries were the result of Seasholtz's negligence in operating the vehicle and requesting damages for past and future medical expenses. Seasholtz retained Emerson as counsel and argued that Wheeler had been treated excessively and that her current complaints were related to past injuries.[8] Seasholtz's expert, however, connected Wheeler's current injuries to the accident, agreeing with Wheeler that her treatment with the physiatrists was warranted but disputing the extent to which her chiropractic treatment was necessary and effective.

During closing argument, Emerson admitted Seasholtz's liability for the accident, stating that the parties had stipulated to liability and that Seasholtz had accepted his responsibility for causing the accident. Emerson then argued, as he had in *Castro*, *Lioce*, and *Lang*, that Wheeler's case was frivolous and contributed to the decline of the legal profession and legal system. Again, he delivered substantially the same argument, while expanding on it, stating:

> You're probably wondering why I spent so much time and energy defending this case. It's not a high-profile case; you are not going to see it on the evening news; it's not a multimillion dollars [sic]—they are not asking for a million dollars. But you see, I have a real passion for cases like this. Because it's cases like this that make people skeptical and distrustful of lawyers and their clients who bring legitimate personal injury suits. And it's a big factor as to why our profession is not as honorable a professional as it once was in the eyes of the public.

---

[7]A physiatrist is "a physician who specializes in physical medicine." *Webster's New Collegiate Dictionary* 887 (9th ed. 1985). Physical medicine is a branch of medicine that diagnoses and treats disease using physical methods like radiation, heat, and electricity. *Id.*

[8]Before the accident, Wheeler had been very active in sports and other activities, from which she had previously sustained several injuries.

But the only way that people and their lawyers and their chiropractors will stop bringing these cases is if juries start saying no: enough is enough. When there is no harm, no foul will be called.

You know, life for all of us is full of its ups and downs, successes and failures, achievements and setbacks. The difference is that most of us accept our problems without trying to blame someone else. We take responsibility for our own lives instead of looking to someone else or looking for an excuse to sue at the drop of a hat.

There's a conventional school of thought prevalent now that Americans have become a society of blamers and excuse makers, that we are unable to accept responsibility for our own lives or the choices that we make and that we now draw our lawyers like gunfighters in the old west, six-shooters; that is often and without hesitation. We call fouls where there is no harm.

I think we have to ask ourselves what has happened to our society when neighbor now sues neighbor over some minor disagreement. Do you honestly think a case like this would have found itself inside of a courtroom 30 to 40 years ago? I think we have to ask ourselves that question. Where has the fundamental values our society has always been known by gone; like honesty, integrity, honor? It's always been said that the American jury system is the conscience of our society; that when a jury speaks through its verdict it's a reflection of our society views and beliefs and values as to what justice is or should be.

This jury, you, have a tremendous responsibility here today. Like I said, this is not a high-profile case, you're not going to see it on the six o'clock news, you're not going to read about it in the newspaper. But your responsibility is no less. You have an opportunity right here today to say that enough is enough and come back here after your deliberation—you're going to receive two verdict forms. This is one of them.

. . . .

. . . We, the jury in the above-entitled action, find for the defendant and against the plaintiff. Date it today's date, . . . and then sign it; and you can go home and rest easy knowing that you did the right thing. Thank you very much, ladies and gentlemen.

Wheeler did not object.

The jury found in Seasholtz's favor. Wheeler moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The district court granted the new trial, finding that Emerson's ar-

guments amounted to misconduct, which had denied Wheeler a fair trial. In rendering its decision, the district court explained that "[t]he pandering committed by [Emerson] was inflammatory and prejudicial. Although Wheeler did not object to the alleged misconduct, the Court finds [Emerson's] comments were of such sinister influence as to constitute irreparable error." Seasholtz appeals, arguing that the district court abused its discretion by granting a new trial.[9]

## DISCUSSION

In these appeals, we revisit the standards that the district courts are to apply when deciding a motion for a new trial based on attorney misconduct. We also clarify the proper appellate standards for reviewing the district court's order. Then, we determine whether Emerson's arguments amounted to misconduct and, if so, whether the district courts abused their discretion in granting or denying the new trial motions because of the misconduct.

*Attorney misconduct jurisprudence and the standards utilized by the district court for a new trial based on attorney misconduct*

As noted, these appeals raise the issue of which standards district courts are to apply when deciding motions for a new trial based on attorney misconduct. These standards should vary depending on whether the purported misconduct was objected to and admonished, objected to and unadmonished, *i.e.*, the objection was overruled, or sustained but not admonished, repeated or persistent, or unobjected to. But in the past, we have not always differentiated between these types of factual circumstances. Thus, in discussing the standards, we examine Nevada's attorney misconduct jurisprudence, historically.

Our attorney misconduct jurisprudence begins with *Barrett v. Baird*, in which we adopted the Ninth Circuit Court of Appeals' rule that, " '[t]o warrant [a new trial] on grounds of attorney misconduct, the flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.' "[10] However, in *Barrett*, we did not state whether the moving party had objected to the misconduct, and we did not address whether a party must object to alleged attorney misconduct to preserve the issue as a ground for a new trial. Thus, *Barrett*'s permeation rule implicitly applied to both objected-to and unobjected-to misconduct and is unclear in its application. It is not clear whether the permeation

---

[9]In the discussion section, we refer to the Cabreras, Lioce, the Langs, and Wheeler collectively as "plaintiffs." We refer to Castro, the Cohens and Wilson, Knippenberg, and Seasholtz collectively as "defendants."

[10]111 Nev. 1496, 1515, 908 P.2d 689, 702 (1995) (quoting *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.2d 1283, 1286 (9th Cir. 1984)).

rule requires the misconduct to occur throughout the proceeding or whether a single act of misconduct can infect the proceeding to provide a basis for a new trial.

More recently, in *DeJesus v. Flick*, we addressed whether a party's failure to object to improper argument during trial foreclosed that party from raising the issue in the context of an appeal from an order denying a new trial, and we cited *Barrett* in reviewing the attorney's unobjected-to misconduct.[11] While recognizing that "[g]enerally, a failure to object to attorney misconduct precludes review," the majority of this court concluded that an exception to the general rule should apply to prevent the "plain error" that resulted from the "inflammatory quality and sheer quantity of misconduct" by the opposing party's attorney.[12] Underlying the majority's "plain error" determination was its conclusion that the verdict was unsupported by the evidence, which indicated that the cumulative effect of the attorney's improper arguments must have "so thoroughly permeated the proceeding that . . . they tainted the entire trial and resulted in a jury verdict that was the product of passion and prejudice," thereby denying the appealing party a fair trial.[13] Thus, *DeJesus* created a rule that unobjected-to misconduct would be reviewed only for plain error based on the "inflammatory quality and sheer quantity of misconduct."[14]

The dissent in *DeJesus* offered a different test for resolving new trial motions for unobjected-to misconduct. Noting the importance of making objections in the advocacy system, the dissent urged that claims of misconduct are generally entitled to no consideration unless a timely and proper objection and a request for admonishment has been made.[15] The rationale for this rule is to provide the court with an opportunity to instruct counsel, admonish the jury, and prevent additional prejudice through repeated misconduct, thus avoiding a mistrial or appeal. Referring to this purpose, the dissent quoted *Horn v. Atchison, Topeka and Santa Fe Railway Co.*,[16] saying, " 'It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.' "[17] In this, the dissent reasoned that appellate review would not be necessary in

[11]116 Nev. 812, 815-16, 7 P.3d 459, 462 (2000) (plurality opinion).

[12]*Id.* at 816, 7 P.3d at 462.

[13]*Id.* at 820, 7 P.3d at 464.

[14]*Id.* at 816, 7 P.3d at 462.

[15]*Id.* at 826, 7 P.3d at 468-69 (ROSE, C. J., dissenting).

[16]394 P.2d 561 (Cal. 1964).

[17]*DeJesus*, 116 Nev. at 826, 7 P.3d at 468-69 (ROSE, C. J., dissenting) (quoting *Horn*, 394 P.2d at 565).

most cases where misconduct occurred because the trial court would have the opportunity to immediately remedy any prejudice. However, the *DeJesus* dissent recognized that in rare circumstances, unobjected-to misconduct may be so sinister as to amount to irreparable and fundamental error.[18]

After *DeJesus*, we again examined unobjected-to misconduct in *Ringle v. Bruton*, and a majority of this court attempted to clarify that case.[19] The *Ringle* court first recognized the two salutary purposes of objections: (1) "[o]bjections demonstrate that the objecting party takes issue with the conduct,"[20] and (2) "[t]imely objections . . . conserve judicial resources" by allowing the trial court the "opportunity to correct any potential prejudice and to avoid a retrial," which "may also obviate the need for an appeal."[21] We therefore "reiterate[d] the requirement in civil cases that counsel timely and specifically object to instances of improper argument in order to preserve an issue for appeal."[22] We then stated that we would consider "egregious but unobjected-to misconduct . . . 'only in those rare circumstances where the comments are of such sinister influence as to constitute irreparable and fundamental error.' "[23] We noted that "irreparable and fundamental error" is such that, if left uncorrected, "would result in a substantial miscarriage of justice or denial of fundamental rights," and we pointed out that this error occurs only when "it is plain and clear that no other reasonable explanation for the verdict exists."[24] However, this plain error rule was not enunciated in *DeJesus*, and the *Ringle* court's reliance on *DeJesus* as authority for the rule was improper.

Applying the "clarified" rule to the facts presented in *Ringle*, we concluded that because Ringle's counsel failed to object to the purported misconduct, "any error resulting from the misconduct [was] deemed waived," and, unless Ringle could show that the verdict was "unreliable," he was precluded from arguing that issue on appeal.[25] But we then noted that it was unnecessary for us to review the verdict's reliability because Ringle had not shown misconduct so permeating the record as to support the need for a new trial in the first place.[26] Thus, in *Ringle*, the application of the plain error

---

[18]*Id.* at 827, 7 P.3d at 469.

[19]120 Nev. 82, 95-96, 86 P.3d 1032, 1040 (2004).

[20]*Id.* at 94-95, 86 P.3d at 1040.

[21]*Id.* at 95, 86 P.3d at 1040.

[22]*Id.*

[23]*Id.* at 96, 86 P.3d at 1041 (quoting *Budget Rent A Car Systems, Inc. v. Jana*, 600 So. 2d 466, 467 (Fla. Dist. Ct. App. 1992)).

[24]*Id.*

[25]*Ringle*, 120 Nev. at 96, 86 P.3d at 1040.

[26]*Id.* at 96, 86 P.3d at 1041.

test suggested that the complaining party must demonstrate that the misconduct permeated the proceedings before this court will consider the reliability of the verdict. However, the scope, nature, and quantity of misconduct are themselves relevant to whether the verdict is reliable. The *Ringle* court therefore misapplied the rule that it adopted for plain error, which requires an examination of whether there is no other reasonable explanation for the verdict.

After reviewing our prior jurisprudence, we conclude that *Barrett*'s permeation rule is incomplete and that *DeJesus*'s "inflammatory quality and sheer quantity" test is unworkable. Accordingly, the rule and test in those opinions are overruled. While we approve of *Ringle*'s "plain error" test for unobjected-to misconduct, its application is limited to an examination of whether "no other reasonable explanation for the verdict exists" except for the misconduct. Accordingly, we take this opportunity to revise our attorney misconduct jurisprudence and outline the proper standards for granting or denying a new trial based on attorney misconduct.

*Objected-to and admonished misconduct and objected-to and unadmonished misconduct*

As *Ringle* dealt with unobjected-to misconduct, *Barrett*'s rule, that a new trial is proper when attorney misconduct sufficiently permeates the proceedings, still applies to objected-to misconduct. However, *Barrett*'s standard for objected-to misconduct does not sufficiently consider and apply the salutary purposes of objection, and we therefore overrule *Barrett*. We restate the requirement that in our advocacy system, the parties' attorneys are required to competently and timely state their objections. And in cases in which an objection has been made to attorney misconduct, the district court should not only sustain the objection but admonish the jury and counsel.

In the event of a new trial motion, the better standard for reviewing objected-to and admonished misconduct was a standard presented in *DeJesus*'s dissenting opinion. The *DeJesus* dissenting opinion precluded any review on appeal for attorney misconduct unless the record showed a timely and proper objection and a request that the jury be admonished.[27] We agree and conclude that for objected-to and admonished misconduct, a party moving for a new trial bears the burden of demonstrating that the misconduct is so extreme that the objection and admonishment could not remove the misconduct's effect. When the district court finds that the ob-

---

[27]*DeJesus v. Flick*, 116 Nev. 812, 826, 7 P.3d 459, 468-69 (2000) (ROSE, C. J., dissenting).

jection and admonishment were insufficient to remove the attorney misconduct's effect, a new trial is warranted.

When a party objects to purported attorney misconduct but the district court overrules the objection and the jury is not admonished, the party moving for a new trial based on that purported attorney misconduct must first demonstrate that the district court erred by overruling the party's objection. If the district court concludes that it erred by overruling the objection, the district court must then consider whether an admonition to the jury would likely have affected the verdict in favor of the moving party. In this, the court must evaluate the evidence and the parties' and the attorneys' demeanor to determine whether a party's substantial rights were affected by the court's failure to sustain the objection and admonish the jury.[28]

### Repeated or continued objected-to misconduct

As demonstrated in *Lang*, the proper standard for considering objected-to persistent or repeated attorney misconduct presents a more complex issue. The plaintiffs argue that when the misconduct continues after a sustained objection, the "simple sustained objection does little to erase such improper and emotional arguments and pandering to [the jury's] passion and prejudice, especially when such comments are the last thing a jury hears about a case." The defendants argue that when an argument is objected to and the objection is sustained, any prejudice from the allegedly improper argument is thereby sufficiently cured.

As we stated above, when a party's objection to an improper argument is sustained and the jury is admonished regarding the argument, that party bears the burden of demonstrating that the objection and admonishment could not cure the misconduct's effect. However, when, as in *Lang*, an attorney must continuously object to repeated or persistent misconduct, the nonoffending attorney is placed in the difficult position of having to make repeated objections before the trier of fact, which might cast a negative impression on the attorney and the party the attorney represents, emphasizing the improper point.[29]

We therefore conclude that when the district court decides a motion for a new trial based on repeated or persistent objected-to misconduct, the district court shall factor into its analysis the notion that, by engaging in continued misconduct, the offending attorney

---

[28]NRCP 59(a)(2) (providing that a new trial may be granted when a party's substantial rights have been affected by misconduct).

[29]*Leathers v. General Motors Corp.*, 546 F.2d 1083, 1086 (4th Cir. 1976).

has accepted the risk that the jury will be influenced by his misconduct. Therefore, the district court shall give great weight to the fact that single instances of improper conduct that could have been cured by objection and admonishment might not be curable when that improper conduct is repeated or persistent.

### Unobjected-to misconduct

*Ringle* stated that a party must object to purportedly improper argument to preserve this issue for appeal.[30] We reapprove this requirement, and we note that it is also necessary that a party object in order to preserve this issue in the district court for motions for a new trial. When the party has not objected to the complained-of conduct, the district court should generally deem this issue to be waived.

In cases of plain error, however, we, and the district courts, may still review allegations of unobjected-to attorney misconduct. As we stated in *Ringle*, plain error requires a party to show "that no other reasonable explanation for the verdict exists."[31] This standard addresses the rare circumstance in which the attorney misconduct offsets the evidence adduced at trial in support of the verdict.

Accordingly, the proper standard for the district courts to use when deciding a motion for a new trial based on unobjected-to attorney misconduct is as follows: (1) the district court shall first conclude that the failure to object is critical and the district court must treat the attorney misconduct issue as having been waived, unless plain error exists. In deciding whether there is plain error, the district court must then determine (2) whether the complaining party met its burden of demonstrating that its case is a rare circumstance in which the attorney misconduct amounted to irreparable and fundamental error. In the context of unobjected-to attorney misconduct, irreparable and fundamental error is error that results in a substantial impairment of justice or denial of fundamental rights such that, but for the misconduct, the verdict would have been different.[32]

### Requirements for the district court

Additionally, we now require that, when deciding a motion for a new trial, the district court must make specific findings, both on

---

[30]*Ringle*, 120 Nev. at 95, 86 P.3d at 1040.

[31]*Id.* at 96, 86 P.3d at 1041.

[32]*See id.* at 95, 86 P.3d at 1040 ("Irreparable and fundamental error . . . is only present when it is plain and clear that no other reasonable explanation for the verdict exists."); *Parodi v. Washoe Medical Ctr.*, 111 Nev. 365, 368, 892

the record during oral proceedings and in its order, with regard to its application of the standards described above to the facts of the cases before it. In doing so, the court enables our review of its exercise of discretion in denying or granting a motion for a new trial.

### Appellate standards of review of motions for a new trial based on attorney misconduct

On appeal, we review orders denying or granting motions for a new trial for an abuse of discretion.[33] Whether an attorney's comments are misconduct is a question of law, which we review de novo;[34] however, we will give deference to the district court's factual findings and application of the standards to the facts.[35] Our review in the instant appeals involves questions of law and fact; therefore, we review the district courts' decisions regarding whether Emerson's comments were misconduct de novo, and we give deference to the district courts' factual findings and their application of the standards to the facts.

### Impropriety of Emerson's arguments

We next address whether Emerson's arguments were improper. The challenged arguments can be classified into three types of alleged misconduct: (1) jury nullification; (2) statements of personal opinion; and (3) golden rule arguments, which occurred only in the *Lang* case. We describe each type of misconduct below, and we conclude that all of Emerson's challenged closing arguments were improper.

#### Jury nullification

Jury nullification has been defined as,

> [a] jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.[36]

---

P.2d 588, 590 (1995) ("plain error is error which . . . 'had a prejudicial impact on the verdict when viewed in context of the trial as a whole' " (quoting *Libby v. State*, 109 Nev. 905, 911, 859 P.2d 1050, 1054 (1993))).

[33]*Langon v. Matamoros*, 121 Nev. 142, 143, 111 P.3d 1077, 1078 (2005).

[34]*See Bronneke v. Rutherford*, 120 Nev. 230, 232, 89 P.3d 40, 42 (2004) (applying de novo review in an appeal involving a motion for a new trial because the appeal primarily concerned a legal issue).

[35]*See D.R. Horton, Inc. v. Green*, 120 Nev. 549, 553, 96 P.3d 1159, 1162 (2004) (applying de novo review to legal issues and leaving the factual application of the issue to the district court's discretion).

[36]*Black's Law Dictionary* 875 (8th ed. 2004).

As set forth above, Emerson made arguments that these cases wasted taxpayers' money and jurors' time. Emerson also argued that the cases were examples of people "looking for an excuse to sue someone at the drop of a hat" and that society now believed that "Americans have become a society of blamers." Defendants contend that these arguments are not misconduct and, instead, that the arguments implied that it was

> a waste of time and resources to bring cases that do not have an adequate basis in fact and law to prevail. Th[e] comment[s] w[ere] supported by the evidence that showed that [the defendant] was not negligent in this case and was affirmed when the jury reached a defense verdict in this case.

We disagree and conclude that Emerson's arguments amounted to impermissible jury nullification.

Emerson's arguments suggested to the jurors that, regardless of the evidence, if the jury found in the defendants' favors, the jury could remedy the social ills of frivolous lawsuits. Essentially, Emerson asked the jury to "send a message" about frivolous lawsuits. His arguments were directed at causing the jurors to harbor disdain for the civil jury process—a defining, foundational characteristic of our legal system—and at perpetuating a misconception that most personal injury cases are unfounded and brought in bad faith by unscrupulous lawyers. These arguments were irrelevant to the cases at hand and improper in a court of law and constitute a clear attempt at jury nullification.

### Personal opinion regarding the justness of the plaintiffs' causes

Under Nevada Rule of Professional Conduct (RPC) 3.4(e), an attorney shall not state to the jury "a personal opinion as to the justness of a cause, the credibility of a witness, [or] the culpability of a civil litigant."[37] As an example, we have held in criminal cases that prejudicial misconduct occurred when an attorney provided the jury with his personal opinion on an expert witness's credibility and a defendant's character.[38] Although criminal cases involve constitutional issues, requiring heavy scrutinization of improper comments, an attorney's statements of personal opinion as to the justness of a cause, the credibility of a witness, or the cul-

---

[37]At the time of trial, this ethical duty was set forth in SCR 173(5).

[38]*Yates v. State*, 103 Nev. 200, 204, 734 P.2d 1252, 1255 (1987) (holding that reversible misconduct occurred when an attorney called the expert witness's testimony " 'm[a]larkey' " and " 'outright fraud' "); *Sipsas v. State*, 102 Nev. 119, 125, 716 P.2d 231, 234 (1986) (holding similarly when an attorney called an expert witness a " 'hired gun from Hot Tub Country' ").

pability of a litigant is nonetheless improper in civil cases and may amount to prejudicial misconduct necessitating a new trial.

Plaintiffs contend that Emerson impermissibly injected his personal opinion about the justness of their causes when he said that he had "a real passion for [these] case[s] and cases like [them]," because these were the types of cases that cause people to be distrustful of lawyers and legitimate plaintiffs and lead to what Emerson argued was the public's negative perception of the legal system.

Defendants counter that Emerson's comments were simply "setting the stage" for their request that the jury "let the truth speak through its verdict" and reflect "society's values and beliefs of what justice is or should be." They argue that Emerson was urging the juries to fulfill their responsibility even though the cases were "not high profile." According to defendants, because the cases were not high profile, it would be illogical that Emerson would assert that the cases had an effect on the diminution of the legal profession in the public's eyes; Emerson was merely "trying to remind the jury of their duty to follow the law, ignore what others may think[,] and make a decision based on the evidence that had been presented." Accordingly, defendants assert that Emerson's arguments were appropriate. We disagree.

The comments noted above reflect Emerson's personal opinion about the justness of personal injury litigants' causes and the defendants' culpability. Emerson stated that because of the sheer frivolity of these cases, it was his personal crusade to defend his clients. He also indicated that these types of cases directly contributed to the decline of the public's perception of the legal profession and to the widespread impression that personal injury cases are meritless. By representing to the jury his personal opinion that the plaintiffs' cases were worthless, Emerson not only violated his ethical duties, he also prejudiced the jury against the plaintiffs.[39]

### The golden rule argument

An attorney may not make a golden rule argument, which is an argument asking jurors to place themselves in the position of one of the parties.[40] Golden rule arguments are improper because they infect the jury's objectivity.[41]

---

[39]The third comment also amounts to jury nullification because it asserted that the jury should accept an attorney's personal opinion on a public policy debate as a substitute for the evidence and law that should decide the case.

[40]*Boyd v. Pernicano*, 79 Nev. 356, 358-59, 385 P.2d 342, 343 (1963).

[41]*Id.* at 358, 385 P.2d at 343.

Only the Langs argued that Emerson made a golden rule argument. In *Lang*, Emerson asked the jury to consider whether, if the jurors' children were injured at a slumber party, they would merely consider that an accident or see it as an opportunity to sue. Emerson impliedly asked the jurors to consider what remedies the jurors would pursue for the accident and inferred that the jurors would not consider litigation.

Emerson's client in the *Lang* case, Knippenberg, first argues that the Langs waived their challenge by failing to object to this comment. She also argues that the comment is not a golden rule argument because the comment did not place jurors in either the Langs' or Knippenberg's position. Knippenberg contends that the purpose of the comment was "to provide a hypothetical situation involving an accident that occurred absent any negligence." We disagree.

Regarding the Langs' failure to object, we conclude that, because of the persistent nature of Emerson's misconduct, the Langs' objections to Emerson's other improper arguments sufficiently preserved this issue for appeal. During his closing argument, Emerson plainly stated to the jurors, "*You* send *your* son or daughter" to a friend's house, where he or she was injured, and questioned, "[D]oes that mean *you* just go out and sue[?]" (Emphasis added.) He invited the jurors to make a decision as if they and their children were involved in his hypothetical situation—a situation that somewhat paralleled the scenario of the Langs' daughter's injuries. This question indicated that the jury could make a decision based on the personal hypothetical designed to trivialize the daughter's injuries instead of deciding the case on negligence law and the evidence that the Langs and Knippenberg presented. Thus, Emerson's comment amounted to an impermissible golden rule argument.

*Review of the district courts' orders in the instant cases*

As we have concluded that Emerson's arguments are misconduct, we must next decide whether the district courts abused their discretion in deciding the motions for new trial.

In the *Castro* case, Castro was cited for causing the accident, and he paid the fine without protest. Castro informally stipulated to liability for arbitration, and the arbitrator found against him. However, after a trial de novo, the jury found against the Cabreras and in Castro's favor. The district court, who witnessed the parties' and their attorneys' demeanor and the effect of Emerson's improper closing argument on the jurors, found that a new trial was warranted, even absent objection. In ordering a new trial, the district court specifically referenced Emerson's improper arguments.

Although the district court applied *Barrett*'s "sufficiently permeated the proceedings" standard when granting the new trial, based on the facts of this case and because the district court concluded that Emerson's arguments amounted to repeated misconduct egregious enough to require a new trial, we conclude that the district court did not abuse its discretion in granting the Cabreras' motion for a new trial. We affirm the district court's order.[42]

In the *Seasholtz* case, Seasholtz admitted liability for the accident and only disputed Wheeler's injuries. Seasholtz's expert agreed that the majority of Wheeler's medical treatment was necessary, and he only disputed her chiropractic treatment. Yet the jury found against Wheeler entirely and denied her any recovery—even for her undisputed medical expenses. In granting Wheeler's motion for a new trial, the district court concluded that notwithstanding Wheeler's failure to object, Emerson's arguments amounted to irreparable and fundamental error.

Again, as with the *Castro* case, the district court in the *Seasholtz* matter employed the former standard, commenting that Emerson's "comments were of such sinister influence as to constitute irreparable error." Although an improper standard was used, we give deference to the district court's conclusion that Emerson's comments amounted to irreparable error, and based on the facts, we conclude that the district court did not abuse its discretion by granting Wheeler's motion for a new trial. We therefore affirm the district court's order.[43]

In the *Lang* case, when denying the Langs' motion for a new trial, the district court relied on *Barrett* and *DeJesus*. As we have overruled *Barrett* and *DeJesus* did not apply because it addressed unobjected-to misconduct and the Langs objected to Emerson's misconduct, the district court employed incorrect standards when deciding whether the Langs' motion for a new trial should be granted. Therefore, we vacate the district court's order, and we remand the *Lang* matter to the district court for it to apply the correct standards and to determine whether Emerson's misconduct requires a new trial.

Finally, in the *Lioce* case, the order denying Lioce's motion for a new trial is summary, only stating that the motion was denied without providing any reasoning. As there is no reasoning for the district court's decision, we are unable to decide whether it abused

---

[42]We will affirm the district court's order when it reaches the right decision, even if for the wrong reason. *Albios v. Horizon Communities, Inc.*, 122 Nev. 409, 426 n.40, 132 P.3d 1022, 1033 n.40 (2006).

[43]*Id.*

its discretion in denying Lioce's motion for a new trial. Accordingly, we vacate the district court's order and remand this case for a decision on the motion based on the standards discussed in this opinion.[44]

*Deliberate misconduct*

In support of their positions on appeal, defendants assert two arguments that warrant further discussion. First, they argue that Emerson's comments did not amount to prejudicial misconduct and new trials are not required because Emerson did not deliberately engage in the misconduct. Second, they argue that the plaintiffs' attorneys also engaged in misconduct during the respective trials, which this court must consider when deciding these appeals. Both of these positions are without merit.

A claim of misconduct cannot be defended with an argument that the misconduct was unintentional. Either deliberate or unintentional misconduct can require that a party receive a new trial. The relevant inquiry is what impact the misconduct had on the trial, not whether the attorney intended the misconduct. Even so, we reject defendants' argument that Emerson's misconduct here was unintentional. In each case, Emerson delivered nearly the same closing argument, just expanding on the argument and adding additional improper material as the cases progressed. Therefore, we are unpersuaded by the assertion that Emerson's continued use and expansion of the improper arguments was not deliberate.

We also reject defendants' proffered justification that we must consider the plaintiffs' attorneys' purported misconduct when addressing Emerson's unethical conduct. Defendants did not object below to the majority of the statements they now argue are misconduct, and we conclude that defendants have not overcome their failure to object by demonstrating irreparable and fundamental error. Nevertheless, the majority of defendants' contentions regarding the plaintiffs' attorneys' purported misconduct are without merit and do not amount to misconduct. And in many instances, defendants' arguments regarding plaintiffs' attorneys' purported misconduct are founded upon misrepresentations of the plaintiffs' attorneys' conduct.

---

[44]Lioce argues that, should we decide a new trial is warranted, his case must be remanded to a different district court judge because Judge Bell was biased toward him. We conclude that this argument is without merit, and we also direct Lioce to NRS 1.235(1), which states that a party desiring to disqualify a judge in district court "must file an affidavit specifying the facts upon which the disqualification is sought." *See also Towbin Dodge, LLC v. Dist. Ct.*, 121 Nev. 251, 112 P.3d 1063 (2005).

More importantly, a court of law is no place to resort to the argument of "he said it first" or "he did it too." Opposing counsel's violations of professional standards should never be the basis for engaging in professional misconduct. Merely because another lawyer allegedly disregards the ethical rules does not give the opposing lawyer the right to also disregard the rules. Further, asserting that engaging in misconduct because another lawyer is also engaging in misconduct is in and of itself misconduct.

*Sanctions*

In our prior opinion, we imposed sanctions on Emerson for attorney misconduct in the *Castro* and *Seasholtz* matters. In the district court, the plaintiffs in both *Castro* and *Seasholtz* moved for sanctions, and the district courts denied those motions.[45] When plaintiffs obtained relief in the district court in the form of an order granting their new trial motions, the issue of sanctions became moot. On rehearing, we decline to impose sanctions.

We have previously recognized that, in criminal cases, attorney misconduct at trial can result in monetary sanctions by this court.[46] However, sanctions for professional misconduct at trial in civil cases are best considered in the first instance by the district court. Therefore, the district court may, on a party's motion or sua sponte, impose sanctions for professional misconduct at trial, after providing the offending party with notice and an opportunity to respond.

This court's consideration of monetary sanctions differs, however, from our review of potential violations of the Nevada Rules

---

[45]The district court in *Seasholtz* denied the motion as untimely. The district court in *Castro* failed to rule on the motion. We have explained that in the context of a district court order denying a motion for attorney fees without specifically addressing a countermotion for attorney fees "[t]he absence of a ruling awarding the . . . expenses [requested in the countermotion] constitute[d] a denial of the claim." *Bd. of Gallery of History v. Datecs Corp.*, 116 Nev. 286, 289, 994 P.2d 1149, 1150 (2000).

[46]*See Greene v. State*, 113 Nev. 157, 170, 931 P.2d 54, 62 (1997) (issuing monetary sanctions, on appeal, against trial counsel for an improper opening statement and the failure to observe the district court's admonitions); *McGuire v. State*, 100 Nev. 153, 159-60, 677 P.2d 1060, 1065 (1984) (issuing monetary sanctions, on appeal, against trial counsel for attorney misconduct during trial); *see also Randolph v. State*, 117 Nev. 970, 982 n.16, 36 P.3d 424, 432 n.16 (2001) (ordering trial counsel to show cause why we should not sanction him, on appeal, for misconduct during trial); *Williams v. State*, 103 Nev. 106, 112 n.6, 734 P.2d 700, 704 n.6 (1987) (stating that we will impose sanctions on attorneys who "cannot conform to the proper norms of professional behavior, whether inside or outside the courtroom").

of Professional Conduct.[47] We therefore refer Emerson to the State Bar of Nevada for an investigation of potential violations of the Rules of Professional Conduct.

## CONCLUSION

Today we revise and clarify our attorney misconduct jurisprudence and provide different standards for the district courts depending on whether the purported attorney misconduct was objected to or not. We also impose on the district courts the requirement to make specific findings on the record and in their orders regarding these standards. In the instant cases, we conclude that the district courts did not abuse their discretion in granting the plaintiffs' motions for a new trial, and we affirm the orders in *Castro* and *Seasholtz*. In addition, we refer Emerson to the State Bar of Nevada. In *Lang* and *Lioce*, we are unable to evaluate whether the district courts abused their discretion in denying the motions for a new trial, and we vacate those orders and remand those cases to the district courts for new decisions under the standards set forth in this opinion.

GIBBONS, C. J., DOUGLAS and CHERRY, JJ., concur.

PARRAGUIRRE, J., with whom MAUPIN, J., agrees, concurring in part and dissenting in part:

I agree with the majority's analysis and conclusions relating to attorney misconduct jurisprudence. I also concur with my colleagues' decision to decline the imposition of monetary sanctions. I disagree, however, with the majority's decision to refer defense counsel to the State Bar of Nevada.

As stated in my previous partial dissent, the district court has the benefit of evaluating all conduct during the course of trial and is in a superior position to determine and impose appropriate penalties for attorney misconduct occurring at trial. Absent a finding of appellate abuse in this case, I would decline to refer defense counsel to the state bar.

MAUPIN, J., concurs:

In retrospect, I agree with Justice Parraguirre that we should not refer defense counsel to the State Bar of Nevada for possible discipline.

---

[47]NCJC Canon 3D(2).