139 Nev., Advance Opinion 58

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

GINA ENGELSON, AS SPECIAL
ADMINISTRATOR OF THE ESTATE
OF LENORE MEYER, DECEASED,
Appellant,
vs.
DIGNITY HEALTH, A FOREIGN
NONPROFIT CORPORATION, D/B/A
ST. ROSE DOMINICAN HOSPITAL-
SIENA CAMPUS; GRAPE HOLDINGS
LLC, A FOREIGN LIMITED LIABILITY
COMPANY, D/B/A SAGE CREEK POST-
ACUTE,
Respondents.

No. 84978-COA

FILED

DEC 28 2023



ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order granting motions to dismiss in a professional negligence action. Eighth Judicial District Court, Clark County; Jessica K. Peterson, Judge.

*Reversed and remanded.*

Burris & Thomas, LLC, and Steven M. Burris and Gary Myers, Las Vegas, for Appellant.

Hall Prangle & Schoonveld, LLC, and Kenneth M. Webster and Tyson J. Dobbs, Las Vegas,
for Respondent Dignity Health.

Hutchison & Steffen, PLLC, and David J. Mortensen and Candace C. Herling, Las Vegas,
for Respondent Grape Holdings LLC.

23-42069

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

## OPINION

By the Court, WESTBROOK, J.:

Complaints for professional negligence must be timely filed within the applicable statute of limitations period, NRS 41A.097(2), and must be supported by an affidavit of merit, NRS 41A.071. When a party suffers an injury or wrongful death caused by professional negligence, NRS 41A.097(2) provides that the statute of limitations begins to run from the date the plaintiff discovers or should have discovered their legal injury. In the underlying proceeding, the district court dismissed an estate's survivorship claims after finding "irrefutable" evidence that the estate and its special administrator knew or should have known about the relevant legal injury more than a year before filing the complaint.[1]

When appellant moved for reconsideration on grounds that the complaint was timely when the claims were construed as wrongful death claims, the district court denied reconsideration on the basis that her complaint failed to state a claim for wrongful death. The district court also found her affidavit of merit was insufficient to support a wrongful death

---

[1]For an injury or wrongful death that is alleged to have occurred on or after October 1, 2002, but before October 1, 2023, a plaintiff must file their professional negligence claim within one year after the plaintiff discovers or should have discovered the legal injury. NRS 41A.097(2). Recent amendments to NRS 41A.097 extended the statute of limitations for professional negligence claims to two years after the plaintiff discovers or should have discovered the injury, but only for claims arising on or after October 1, 2023. See NRS 41A.097(2)-(3) (2023). As the claims in this case arose before October 1, 2023, these amendments do not affect our analysis.

claim because it did not establish that professional negligence *caused* the wrongful death.

We conclude that the district court erred when it dismissed appellant's complaint as time-barred. In doing so, we take this opportunity to clarify that an affidavit of merit need not opine as to the element of causation to support a professional negligence-based wrongful death claim under NRS 41A.071. Therefore, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

85-year-old Lenore Meyer was admitted to St. Rose Dominican Hospital-Siena Campus (St. Rose-Siena) in late June 2020. During her stay at St. Rose-Siena, Meyer received treatment for a urinary tract infection, blocked bowels, and a possible Clostridium difficile (C-diff) infection.

On or about July 28, 2020, Meyer transferred to a skilled nursing facility, Sage Creek Post-Acute (Sage Creek), to receive post-treatment rehabilitation. Upon her admission, Sage Creek documented that Meyer had a stage 3 decubitis ulcer, or bedsore, in her sacral region.

Because of COVID-19 pandemic protocols, Meyer's family was unable to visit her at Sage Creek. However, during this time, Meyer apparently called members of her family to report that she was receiving horrible treatment, which included failing to assist her when she needed to go to the bathroom and leaving her to lie in bed in her own feces. Meyer's family reportedly made numerous phone calls to voice their concerns to the charge nurse and nurse manager. Meyer remained at Sage Creek for approximately two weeks before returning to St. Rose-Siena with a recurrence of C-diff and possible sepsis.

When Meyer was readmitted to St. Rose-Siena on August 12, the hospital documented that Meyer's sacral bedsore was now "huge," "down

to the bone," unstageable, and infected. Meyer remained at St. Rose-Siena for almost a month, until the hospital discharged her on September 4. However, just days later, on September 8, Meyer returned to the hospital due to weakness and altered mental status. At that point, an infectious disease specialist diagnosed Meyer with sepsis, colitis, and pneumonia, and again noted the infected sacral bedsore. On September 10, St. Rose-Siena discharged Meyer to home hospice, where she died four days later.

Exactly one year after Meyer's death, on September 14, 2021, Meyer's daughter Gina Engelson—as special administrator of Meyer's estate—filed a professional negligence complaint against St. Rose-Siena and Sage Creek.[2] Engelson alleged that the nursing care provided by St. Rose-Siena and Sage Creek fell below the standard of care in more than a dozen ways, which included negligence in "[f]ail[ing] to timely and adequately treat skin lesions in order to prevent a preexisting ulcer from getting worse." Engelson alleged that as a "direct and proximate result" of negligence by St. Rose-Siena and Sage Creek, Meyer was "caused to suffer serious bodily injury, including worsened pressure ulcer wounds, infection and great pain of mind and body, loss of a chance of a better outcome, and contributed to her death." Engelson further alleged that, under Nevada law, Meyer's claims and causes of action "survive[d] her death and [could] be prosecuted by the administrator of [her] [e]state." Engelson also alleged that St. Rose-Siena and Sage Creek were "vicariously responsible under the doctrine of respondeat superior . . . for the injuries and death" of Meyer.

---

[2]Engelson's complaint also alleged negligent hiring, training, supervision, and retention, as well as corporate negligence, and further requested punitive damages.

Two exhibits were attached to Engelson's complaint: a "Declaration of Expert" made under penalty of perjury by Debbie Marsh, R.N., which served as an "affidavit of merit,"[3] and an electronic disc containing the medical records and other documentation relied on by Marsh. In her affidavit of merit, Marsh explained that she was familiar with the standard of care for nursing at both hospitals and skilled nursing facilities. She identified specific nurses at St. Rose-Siena and Sage Creek who she believed breached the standard of care in their treatment of Meyer during the summer of 2020. And she identified specific acts of negligence at St. Rose-Siena and Sage Creek that she believed fell below the standard of nursing care. As to St. Rose-Siena, Marsh opined that the hospital negligently allowed Meyer's stage 3 pressure ulcer to develop while failing to document its existence. As to Sage Creek, Marsh opined that its nurses did not meet the standard of care for the prevention, clinical staging, and management of Meyer's pressure-induced soft tissue injuries, which required pressure redistribution, improving skin perfusion, minimizing excess moisture, and turning Meyer every two hours. Although Marsh asserted that the acts of negligence by St. Rose-Siena and Sage Creek "denied Mrs. Meyer a better outcome," she did not offer any opinion that these acts of professional negligence caused Meyer's death.

---

[3]For purposes of this disposition, we will refer to the Marsh declaration as an "affidavit of merit" or "affidavit." As the Nevada Supreme Court recognized in *Baxter v. Dignity Health*, the affidavit of merit required by NRS 41A.071 "can take the form of either a 'sworn affidavit or an unsworn declaration made under penalty of perjury.'" 131 Nev. 759, 762, 357 P.3d 927, 929 (2015) (quoting *Buckwalter v. Eighth Judicial Dist. Court*, 126 Nev. 200, 202, 234 P.3d 920, 922 (2010)).

St. Rose-Siena and Sage Creek moved to dismiss Engelson's complaint pursuant to NRS 41A.097(2) on the basis that it was filed more than one year after Engelson and/or Meyer discovered or should have discovered the legal injury, which they characterized as Meyer's negligently caused bedsore.[4] To establish that Engelson's complaint was time-barred, St. Rose-Siena and Sage Creek relied on factual statements from Marsh's affidavit of merit, where Marsh summarized the information that she had received from Engelson's attorneys based on their interviews with unnamed members of Meyer's family.

Relying primarily on Marsh's affidavit of merit, St. Rose-Siena argued that, as of July 28, 2020, Engelson and Meyer were on inquiry notice of the Meyer estate's negligence claims against the hospital because *that* was the date that the stage 3 sacral ulcer was first documented in Meyer's medical records at Sage Creek. Likewise, Sage Creek relied on the Marsh affidavit to argue that Engelson and/or Meyer were on inquiry notice of the estate's potential negligence claims on or before Meyer's discharge from Sage Creek because, after Sage Creek documented the bedsore, Meyer had spoken by phone with her family regarding the allegedly substandard care she was receiving while at Sage Creek.

The district court agreed, finding that Engelson's complaint and the accompanying affidavit of merit established "irrefutable evidence that Plaintiff was aware of her injury on or around August 11, 2020 at the

---

[4]In its motion to dismiss, Sage Creek conceded that Marsh's affidavit "appear[ed] to support" her allegations of professional negligence for purposes of NRS 41A.071(1).

latest."[5] Because Engelson's complaint was filed more than a year after that date, the court entered an order dismissing Engelson's complaint as time-barred.

Thereafter, Engelson moved for reconsideration, arguing for the first time that, because her complaint alleged wrongful death claims, it was timely filed within one year of her discovery of *that* legal injury: Meyer's wrongful death. In addition, Engelson reargued that Sage Creek was not a "[p]rovider of health care" as defined in NRS 41A.017 and, therefore, the one-year statute of limitations did not apply to Sage Creek. The district court rejected both arguments.

In its order denying reconsideration, the district court concluded that Engelson's complaint failed to state a wrongful death claim and that her affidavit of merit did not satisfy the requirements of NRS 41A.071 because it did not support the allegation that professional negligence *caused* Meyer's death. Additionally, the district court concluded that, regardless of whether Sage Creek was, itself, a "provider of health care" as defined in NRS 41A.017, Engelson's claims against Sage Creek were inextricably linked to the underlying alleged professional negligence of its nurses, and therefore, her claims were subject to the requirements of NRS Chapter 41A. Engelson appeals.

---

[5]When Engelson asked the district court how it determined the accrual date of August 11, 2020, the court explained it was "[b]ased on the statements made by [St. Rose-Siena's counsel] that there was bedsore and treatment of the same through August 11th of 2020." St. Rose-Siena's counsel then noted "just for the record, that [this] is from the Affidavit of Debbie Marsh that says the family was aware that the bedsore was down to the bone and notified that was the case prior to the transfer back to St. Rose on August 12th." The district court then advised Engelson that its determination of the accrual date was "based on your own Affidavit."

## ANALYSIS

*St. Rose-Siena's and Sage Creek's motions to dismiss were not converted to motions for summary judgment*

St. Rose-Siena and Sage Creek both acknowledge that they sought dismissal under NRCP 12(b)(5) on statute of limitations grounds and that the district court granted the relief requested. Yet, they assert that this court must treat their motions to dismiss as motions for summary judgment because the parties' briefing was supported by "evidence outside the complaint." Specifically, St. Rose-Siena and Sage Creek contend that the district court considered documents that were contained on an electronic disc that was attached as an exhibit to Marsh's affidavit of merit and incorporated by reference therein, copies of Governor Sisolak's emergency directives regarding the COVID-19 pandemic, and unpublished orders from other cases ostensibly cited for their persuasive authority. We disagree that the district court's consideration of these documents converted St. Rose-Siena's and Sage Creek's motions to dismiss into motions for summary judgment.

Pursuant to NRCP 12(b)(5), a defendant can move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." And a court can dismiss a complaint under NRCP 12(b)(5) "if the action is barred by the statute of limitations." *Bemis v. Estate of Bemis*, 114 Nev. 1021, 1024, 967 P.2d 437, 439 (1998) (citing NRCP 12(b)(5)). When ruling on a motion to dismiss, a court generally "may not consider matters outside the pleading being attacked." *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 847, 858 P.2d 1258, 1261 (1993); *see* NRCP 12(d). However, a court may properly consider "matters of public record, orders, items present in the record of the case, and any exhibits attached to the complaint when ruling" on such a motion. *Breliant*, 109 Nev. at 847, 858 P.2d at 1261.

Implicitly, the court may also consider legal authorities that, by definition, are not "evidence," when reviewing a motion to dismiss. *See id.*

A court's consideration of such matters will not convert a motion to dismiss into a motion for summary judgment. *See Baxter*, 131 Nev. at 764, 357 P.3d at 930 (stating that "[w]hile presentation of matters *outside* the pleadings will convert [a] motion to dismiss to a motion for summary judgment . . . such conversion is *not* triggered by a court's 'consideration of matters incorporated by reference or integral to the claim,'" including an affidavit or declaration of merit (quoting 5B Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure: Civil* § 1357, at 376 (3d ed. 2004))).

In this case, the district court did not consider evidence outside of the complaint that would convert the motions to ones for summary judgment. Marsh's affidavit of merit was attached as an exhibit to Engelson's complaint. Further, that affidavit incorporated by reference all of the documents that Marsh reviewed, and copies of those documents were contained on an electronic disc that was, itself, attached as an exhibit to Marsh's affidavit. As a result, all of those documents effectively became part of the complaint, and the district court could properly consider them in connection with St. Rose-Siena's and Sage Creek's motions to dismiss without converting them into motions for summary judgment. *See* NRCP 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *see also Baxter*, 131 Nev. at 764, 357 P.3d at 930.

To the extent the parties also attached unpublished orders and copies of the Governor's emergency directives regarding the COVID-19 pandemic as exhibits to their briefing below, the district court's

consideration of such materials likewise did not convert the motions to dismiss into motions for summary judgment because those materials constitute legal authority, not evidence. *See Breliant*, 109 Nev. at 847, 858 P.2d at 1261; *see also Lucky Lucy D LLC v. LGS Casino LLC*, 139 Nev., Adv. Op. 26, 534 P.3d 689, 692 (2023) (recognizing that the "Governor's Emergency Directives . . . carried with them the force of law for the duration of the state of emergency").

Therefore, we review the district court's order under the "rigorous, de novo standard of review" applicable to an order granting a motion to dismiss for failure to state a claim. *Montanez v. Sparks Fam. Hosp., Inc.*, 137 Nev. 742, 743, 499 P.3d 1189, 1191 (2021) (quoting *Slade v. Caesars Entm't Corp.*, 132 Nev. 374, 379, 373 P.3d 74, 78 (2016)). A district court may dismiss a complaint for failure to state a claim only "if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [the plaintiff] to relief." *Buzz Stew, LLC v. City of North Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008). When evaluating such a dismissal, "this court will recognize all factual allegations in [the plaintiff's] complaint as true and draw all inferences in [the plaintiff's] favor." *Id.*

*The district court erred by granting the motions to dismiss on statute of limitations grounds*

Engelson argues that the district court erred when it initially granted St. Rose-Siena's and Sage Creek's motions to dismiss. Engelson contends that her complaint was timely filed within the one-year statute of limitations for professional negligence actions then required by NRS 41A.097(2). Sage Creek disagrees, arguing that the district court properly dismissed Engelson's complaint because the estate was on inquiry notice of

its professional negligence claims more than one year before Engelson filed the complaint.[6]

NRS 41A.097(2) requires claims for professional negligence occurring on or after October 1, 2002, and before October 1, 2023, to be filed "within one year of the injury's discovery and three years of the injury date," whichever occurs first. *Libby v. Eighth Judicial Dist. Court*, 130 Nev. 359, 361, 325 P.3d 1276, 1277 (2014). In *Massey v. Litton*, the Nevada Supreme Court explained that the limitation period for the "discovery" of an injury begins to run when the plaintiff "knows or, through the use of reasonable diligence, should have known of facts that would put a reasonable person on inquiry notice of his cause of action." 99 Nev. 723, 728, 669 P.2d 248, 252 (1983). For purposes of the discovery rule, the "injury" in question is the legal injury, which means *both* the "physical damage" *and* the "[professional] negligence causing the damage." *Id.* at 726, 669 P.2d at 250-51. In the proceedings below, the parties appeared to agree that the "physical damage" at issue was Meyer's bedsore; however, they disagreed about *when* the plaintiff was on inquiry notice that professional negligence may have caused that bedsore.

We note that the one-year statute of limitations is expressly tied to the *plaintiff's* discovery of the injury constituting professional negligence. *See* NRS 41A.097(2) (describing the applicable statute of limitations for the discovery of an injury as "1 year after *the plaintiff* discovers or through the use of reasonable diligence should have discovered the injury" (emphasis added)). In cases like this one, where a decedent's estate is the named

---

[6]St. Rose-Siena does not address this argument in its answering brief, focusing instead on the district court's subsequent ruling on Engelson's motion for reconsideration.

plaintiff, Nevada law indicates that the discovery rule is triggered when the estate or its representative are on inquiry notice of the legal injury. *See, e.g., Kushnir v. Eighth Judicial Dist. Court*, 137 Nev. 409, 411-14, 495 P.3d 137, 140-42 (Ct. App. 2021) (determining that a professional negligence claim accrued on the date that the named plaintiffs—the estate and its administrator—acquired the decedent's medical records); *see also Valley Health Sys., LLC v. Eighth Judicial Dist. Court*, No. 82250, 2021 WL 4860728, at *2 (Nev. Oct. 18, 2021) (Order Granting Petition) (concluding that professional negligence claims accrued when the special administrator of the decedent's estate filed a complaint with the State Board of Nursing).

As the special administrator of Meyer's estate asserting survivorship claims pursuant to NRS 41.100, Engelson "stands in the shoes of the decedent and is subject to all defenses that might have been asserted against the decedent," including any applicable statutes of limitations. *Schwartz v. Wasserburger*, 117 Nev. 703, 708, 30 P.3d 1114, 1117 (2001). Although Engelson filed her lawsuit exactly one year after Meyer's death, the district court had to determine whether Engelson or Meyer "discovered" the legal injury prior to Meyer's death, because if so, the estate's claims would be time-barred. *See, e.g., White v. Johns-Manville Corp.*, 693 P.2d 687, 697 (Wash. 1985) (applying the discovery rule to survivorship actions and concluding that the statute of limitations "commences at the earliest time at which the decedent or his personal representatives knew or should have known" of the legal injury).

Here, the district court dismissed Engelson's complaint after concluding, as a matter of law, that "Plaintiff was aware of her injury on or around August 11, 2020 at the latest" and that the complaint was untimely filed more than one year after this accrual date, on September 14, 2021.

However, the accrual date for the one-year discovery period in NRS 41A.097(2) "ordinarily presents a question of fact to be decided by the jury," and "[o]nly when evidence *irrefutably demonstrates* this accrual date may a district court make such a determination as a matter of law." *Winn v. Sunrise Hosp. & Med. Ctr.*, 128 Nev. 246, 251, 277 P.3d 458, 462 (2012) (emphasis added). Moreover, "[a]t this stage of proceedings [the] court must determine whether there is any set of facts that, if true, would entitle [the plaintiff] to relief and not whether there is a set of facts that would not provide [the plaintiff] with relief." *Szymborski v. Spring Mountain Treatment Ctr.*, 133 Nev. 638, 644, 403 P.3d 1280, 1286 (2017).

To date, Nevada's appellate courts have found irrefutable evidence of the accrual date under only limited circumstances. For instance, in *Winn*, the Nevada Supreme Court determined as a matter of law that a plaintiff "discovered" his daughter's injury, including the cause of that injury, on the date that he first received his daughter's medical records. 128 Nev. at 253, 277 P.3d at 463. "At [that] point, [the plaintiff] had not only hired an attorney to pursue a medical malpractice action, but he also had access to [a relevant] postoperative report" that placed him on inquiry notice that his daughter's injury was caused by professional negligence. *Id.* Likewise, in *Kushnir*, this court concluded, as a matter of law, that an estate's professional negligence claim on behalf of a decedent accrued on the date that the estate acquired the decedent's medical records, as that was the date its medical expert had all the information necessary to discover the medical malpractice and prepare an expert affidavit. 137 Nev. at 411-14, 495 P.3d at 140-42.

Relatedly, in *Estate of Curtis v. Socaoco*, the Nevada Supreme Court concluded that the personal representative of a decedent's estate was

on inquiry notice of the estate's claims against certain health care providers on the date that she was "explicitly informed" by medical professionals that those providers "should have immediately sent [the decedent] to the hospital" after erroneously injecting her with morphine. No. 79116, 2020 WL 5837916, at *2 (Nev. Sept. 30, 2020) (Order of Affirmance). When the decedent died a few days later, the personal representative "knew or should have known that *someone's* negligence in treating the morphine overdose might have caused [her] death." *Id.* (emphasis in original).

Finally, in *Valley Health System*, the Nevada Supreme Court looked to the date that the special administrator of the decedent's estate filed a complaint with the State Board of Nursing to determine the accrual date for the professional negligence claims. 2021 WL 4860728, at *2. Because the complaint alleged that the decedent's health care providers "did not appropriately monitor her, abandoning her care and causing her death," the court concluded that the special administrator "had enough information to allege a prima facie claim for professional negligence" on the date he filed that complaint. *Id.*

Here, the district court did not have irrefutable evidence that Engelson or Meyer were in possession of Meyer's medical records at any time prior to her death. *Cf. Winn*, 128 Nev. at 253, 277 P.3d at 463; *Kushnir*, 137 Nev. at 411-14, 495 P.3d at 140-42. Likewise, the district court was not presented with evidence that any medical professionals "explicitly informed" Engelson or Meyer that the care Meyer was receiving may have either caused her bedsore or caused it to worsen. *Cf. Socaoco*, 2020 WL 5837916, at *2. And the district court was not presented with evidence that Engelson or Meyer filed an administrative complaint against Meyer's

health care providers at any point prior to Meyer's death. *Cf. Valley Health Sys.*, 2021 WL 4860728, at *2.

Although the district court found that Engelson's "complaint and the accompanying [affidavit of merit] established irrefutable evidence" of the accrual date, the court drew improper inferences against both Engelson and Meyer to reach that conclusion. Engelson's complaint does not contain *any* allegations indicating that Engelson or Meyer knew or should have known that professional negligence might have either caused Meyer's bedsore or caused it to worsen at any point prior to Meyer's death. Likewise, Marsh's affidavit of merit does not irrefutably demonstrate that Engelson or Meyer were on inquiry notice of their professional negligence claims while Meyer was still alive. Though the affidavit describes how Meyer's bedsore worsened during her stay at Sage Creek—as documented in her medical records—it does not state that Meyer or her family were aware that her bedsore had worsened due to professional negligence. Additionally, while the affidavit states that Meyer placed phone calls to family members to complain about her treatment at the facility, there is no indication that those complaints had anything to do with Meyer's bedsore.

On appeal, Sage Creek asks this court to find irrefutable evidence of the accrual date in the "memorandum to expert" that was prepared by Engelson's attorneys and attached to Marsh's affidavit. But this memorandum does not irrefutably demonstrate that Engelson's complaint is time-barred either. The memorandum states that Meyer "was told by a nurse at St. Rose-Siena named Anna that there was a bedsore from St. Rose-Siena, but when she was transferred to Sage Creek, it was only the size of a dime and was closing up." Even if Meyer knew she had a bedsore that was healing when she first arrived at Sage Creek, the memorandum

does not establish that Meyer knew her bedsore *worsened* during her stay at the facility due to the treatment and care she was receiving. And even though the memorandum states that when Meyer was subsequently transferred to St. Rose-Siena, the bedsore was "huge," "down to the bone," and "stage 4," the memorandum does *not* state that Meyer or Engelson were actually informed by the hospital staff that her condition had in fact worsened and, more specifically, was the result of professional negligence.

While the affidavit of merit and the memorandum to expert both generally referenced phone calls that Meyer had with unnamed "family members" during her two-week stay at Sage Creek, neither document states that Meyer discussed her bedsore during any of these calls. Instead, the documents reflect that Meyer complained to her family about the *treatment* she was receiving at Sage Creek and that she told her family about a few specific instances of that mistreatment. The documents further state that "the family" tried to call the head nurse and manager to get help for Meyer, which was not given. To conclude, based on the vague references in these documents that, as of August 11, 2020, Engelson and Meyer knew or should have known that professional negligence by St. Rose-Siena and Sage Creek may have caused Meyer's bedsore or caused the bedsore to worsen, the district court had to draw inferences against them, which it was not permitted to do when ruling on a motion to dismiss.[7]

---

[7]Sage Creek also relies on language in the memorandum to expert which states that the family has "recordings" of phone calls with Meyer during her stay at the facility. But again, there is no indication these recordings referenced Meyer's bedsore or showed that Meyer or Engelson were aware that a professional negligence claim against Sage Creek may exist.

It is important to remember that the professional negligence alleged in this case occurred during the summer of 2020, when much of this State was subject to COVID-19 pandemic restrictions and when Meyer's family was not even permitted to see her in person to witness the wound that is at the heart of this litigation. Although Meyer's medical records from the summer of 2020 contain documentation regarding her bedsore, it is unclear when Engelson first received copies of those medical records.[8] Absent "irrefutable evidence" that Meyer or Engelson were aware of the contents of Meyer's medical records by August 11, 2020, we cannot say that they were on inquiry notice of the professional negligence claims as of that date.

Thus, because the evidence before the district court did not "irrefutably demonstrate" that Meyer or Engelson discovered Meyer's legal injury as of August 11, 2020, *see Winn*, 128 Nev. at 251, 277 P.3d at 462,

---

[8]We refuse, at this time, to adopt Engelson's contention that the true accrual date was April 15, 2021—the day Engelson's attorney received a copy of Meyer's medical records from Sage Creek. Although Engelson relies on a Custodian of Records Affidavit indicating that Meyer's medical records were reproduced on that date, the affidavit does not irrefutably demonstrate that this was the *actual* accrual date when Engelson first discovered the injury. Rather, this evidence merely establishes that Engelson discovered Meyer's injury *no later than* April 15, 2021. *See Winn*, 128 Nev. at 253, 277 P.3d at 463 (holding that the date the plaintiff received medical records irrefutably demonstrated the latest date on which he was placed on inquiry notice of a potential cause of action). Discovery may reveal that Meyer's family obtained the necessary information or medical records from Sage Creek or St. Rose-Siena *prior* to their reproduction to Engelson's attorney on April 15, 2021. And, because the accrual date is generally a question of fact, it would be premature for us to decide this issue on appeal. *See Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. 289, 299, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance.").

the district court erred in determining as a matter of law that the complaint was time-barred.

*This court may address the district court's rulings on the merits of Engelson's motion for reconsideration*

After the district court dismissed her complaint on statute of limitations grounds, Engelson moved for reconsideration on the basis that her complaint stated a wrongful death claim that was timely filed within one year of Meyer's death. This was an argument that Engelson had not raised in response to the previously filed motions to dismiss. In her motion for reconsideration, Engelson also reargued a point that she had previously raised in opposition to Sage Creek's motion to dismiss—namely, that Sage Creek was not a "[p]rovider of health care" as defined in NRS 41A.017 and, therefore, the one-year statute of limitations did not apply to Sage Creek.

The district court could have declined to consider both arguments, and it would have been within the court's discretion to do so. *See* EDCR 2.24(a) ("No motion once heard and disposed of may be renewed in the same cause, nor may the same matters therein embraced be reheard, *unless by leave of the court* . . . ." (emphasis added)). Instead, the court rejected both arguments on their merits in a written order that was issued before Engelson filed her notice of appeal. Where, as here, the district court's "reconsideration order and motion are properly part of the record on appeal from the final judgment, and . . . the district court elected to entertain the motion on its merits, then we may consider the arguments asserted in the reconsideration motion in deciding an appeal from the final judgment."[9] *Arnold v. Kip*, 123 Nev. 410, 417, 168 P.3d 1050, 1054 (2007).

_____

[9]We note that both St. Rose-Siena and Sage Creek have asked this court to decide whether Engelson's allegations are subject to NRS Chapter

This court generally reviews the denial of a motion for reconsideration for abuse of discretion. *See Saticoy Bay, LLC, Series 34 Innisbrook v. Thornburg Mortg. Sec. Tr. 2007-3*, 138 Nev., Adv. Op. 35, 510 P.3d 139, 146 (2022). "An abuse of discretion can occur when the district court bases its decision on a clearly erroneous factual determination or it disregards controlling law." *MB Am., Inc. v. Alaska Pac. Leasing Co.*, 132 Nev. 78, 88, 367 P.3d 1286, 1292 (2016). And "deference is not owed to legal error." *AA Primo Builders, LLC v. Washington*, 126 Nev. 578, 589, 245 P.3d 1190, 1197 (2010). Additionally, we review questions of law, including questions of statutory interpretation, de novo. *Soro v. Eighth Judicial Dist. Court*, 133 Nev. 882, 885, 411 P.3d 358, 361 (Ct. App. 2017); *Pub. Agency Comp. Tr. (PACT) v. Blake*, 127 Nev. 863, 866, 265 P.3d 694, 696 (2011).

As detailed below, we conclude that the district court erred by determining that Engelson failed to adequately plead and support a wrongful death claim on behalf of the estate based on professional negligence. And, because the one-year statute of limitations for a wrongful death claim based on professional negligence begins to run when "the plaintiff discovers or reasonably should have discovered the legal injury, i.e., both the fact of death and the negligent cause thereof," *see Pope v. Gray*, 104 Nev. 358, 362, 760 P.2d 763, 765 (1988), we conclude that the district court erred in determining that Engelson's complaint—filed exactly one year after Meyer's death—was untimely. Consequently, to the extent it based its denial of reconsideration on those erroneous determinations, the district court abused its discretion. Nevertheless, the district court

---

41A and whether her complaint and expert declaration complied with NRS 41A.071.

correctly found that Engelson's professional negligence claims against Sage Creek were subject to the requirements of NRS Chapter 41A.

*Engelson's complaint adequately stated a claim for wrongful death based upon professional negligence*

Before addressing whether Engelson's complaint sufficiently stated a claim for wrongful death on behalf of the estate, we note that "[w]rongful death is a cause of action created by statute, having no roots in the common law." *Alsenz v. Clark Cty. Sch. Dist.*, 109 Nev. 1062, 1064, 864 P.2d 285, 286 (1993). Nevada's wrongful death statute, NRS 41.085, provides that "[w]hen the death of any person . . . is caused by the wrongful act or neglect of another, the heirs of the decedent and the personal representatives of the decedent" may maintain a wrongful death claim for "damages against the person who caused the death." NRS 41.085(2). The statute thus "creates two separate wrongful death claims, one belonging to the heirs of the decedent and the other belonging to the personal representative of the decedent, with neither being able to pursue the other's separate claim." *Alcantara v. Wal-Mart Stores, Inc.*, 130 Nev. 252, 256, 321 P.3d 912, 914 (2014).

To state a wrongful death claim under NRS 41.085(2), Engelson's complaint needed to allege that the defendants' "wrongful act or neglect . . . caused" Meyer's death. NRS 41.085(2); *see also Gilloon v. Humana Inc.*, 100 Nev. 518, 521, 687 P.2d 80, 82 (1984) ("The death of the decedent being an essential element of the cause of action for wrongful death, there can be no legal injury until the death has occurred."). Further, Engelson needed to allege that she was among the classes of persons entitled to assert a wrongful death claim: a statutory heir, a personal representative, or both. *See* NRS 41.085(2). And depending on how Engelson self-identified in the complaint—as an heir or a personal

COURT OF APPEALS
OF
NEVADA

(O) 1947B

representative—her available damages would have been limited. *See* NRS 41.085(4)-(5).

Nevada is a notice pleading jurisdiction that liberally construes pleadings. NRCP 8(a); *Droge v. AAAA Two Star Towing, Inc.*, 136 Nev. 291, 308, 468 P.3d 862, 878 (Ct. App. 2020). "A complaint need only set forth sufficient facts to demonstrate the necessary elements of a claim for relief so that the defending party has adequate notice of the nature of the claim and relief sought." *W. States Constr., Inc. v. Michoff*, 108 Nev. 931, 936, 840 P.2d 1220, 1223 (1992). As mentioned, a complaint should be dismissed for failure to state a claim "only if it appears beyond a doubt that [the plaintiff] could prove no set of facts, which, if true, would entitle [her] to relief." *Buzz Stew*, 124 Nev. at 228, 181 P.3d at 672.

Although Engelson's complaint was inartfully drafted, it set forth the essential elements of a wrongful death claim against both St. Rose-Siena and Sage Creek. Engelson alleged that St. Rose-Siena and Sage Creek were both "vicariously responsible under the doctrine of respondeat superior . . . for the injuries *and death*" of Meyer. Engelson identified specific "wrongful act[s] or neglect" by both St. Rose-Siena and Sage Creek relating to the development and progression of the pressure ulcer. And Engelson alleged that as a "direct and proximate result" of the negligence by St. Rose-Siena and Sage Creek, Meyer was "caused to suffer serious bodily injury, including worsened pressure ulcer wounds, infection and great pain of mind and body, loss of a chance of a better outcome, *and contributed to her death*."

Importantly, Engelson self-identified as "the Special Administrator of the Estate of LENORE MEYER, deceased," and brought her lawsuit "on behalf of the Estate of LENORE MEYER, deceased." Thus,

for purposes of Nevada's wrongful death statute, Engelson was Meyer's personal representative, *see* NRS 132.265 (defining the term "[p]ersonal representative" to include "a special administrator"), and was therefore entitled to seek the damages available to Meyer's estate under NRS 41.085(5). These allegations in the complaint, which we must accept as true, sufficed to state a claim for wrongful death against both St. Rose-Siena and Sage Creek under NRCP 8(a). Therefore, the district court abused its discretion when it found that Engelson's complaint failed to state a wrongful death claim.

*Engelson's affidavit of merit satisfied NRS 41A.071*

As noted, the district court also found that Engelson's affidavit of merit was insufficient to support a wrongful death claim pursuant to NRS 41A.071. St. Rose-Siena and Sage Creek contend that the affidavit of merit was insufficient because it failed to allege that they *caused* Meyer's death, where causation is an essential element of a wrongful death claim. Engelson responds that there is no requirement in NRS 41A.071 that an affidavit of merit must establish causation in wrongful death cases. To resolve this dispute, we must examine the statute.

When interpreting a statute, appellate courts look first to the statute's plain language. *Smith v. Zilverberg*, 137 Nev. 65, 72, 481 P.3d 1222, 1230 (2021). If the statute's plain language is unambiguous, we will enforce the statute as written, without resorting to the rules of construction. *Local Gov't Emp.-Mgmt. Relations Bd. v. Educ. Support Emps. Ass'n*, 134 Nev. 716, 718, 429 P.3d 658, 661 (2018). However, if a statute's language is ambiguous, meaning it is susceptible to more than one reasonable interpretation, we will examine the provision's legislative history and the statutory scheme as a whole to ascertain the Legislature's intent. *We the*

(O) 1947B

*People Nev. v. Miller*, 124 Nev. 874, 881, 192 P.3d 1166, 1171 (2008); *In re Candelaria*, 126 Nev. 408, 411, 245 P.3d 518, 520 (2010).

NRS 41A.071 sets forth the requirements for an affidavit of merit in a professional negligence case. The statute states:

> If an action for professional negligence is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit that:
>
>   1. Supports the allegations contained in the action;
>
>   2. Is submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged professional negligence;
>
>   3. Identifies by name, or describes by conduct, each provider of health care who is alleged to be negligent; and
>
>   4. Sets forth factually a specific act or acts of alleged negligence separately as to each defendant in simple, concise and direct terms.

At the outset, we note that NRS 41A.071 does not specifically state that an affidavit of merit must opine as to causation. Indeed, the word "causation" does not appear anywhere in the text of NRS 41A.071. Rather, when describing the requisite contents of the affidavit, the statute provides only that the affidavit must support the complaint's allegations, identify the negligent providers of health care, and identify the specific act(s) of negligence alleged against each defendant. NRS 41A.071(1), (3), (4).[10] On

---

[10]NRS 41A.071(2) does not address the contents of the affidavit; rather, it addresses the qualifications of the medical expert who submitted the affidavit. *See, e.g., Monk v. Ching*, 139 Nev., Adv. Op. 18, 531 P.3d 600, 602 (2023) ("Subsection 2 of NRS 41A.071 requires [affiant], as the medical expert submitting the affidavit in support of the complaint, to have

its face, the plain language of NRS 41A.071 does not require any discussion of actual or proximate causation. Therefore, in order to conclude that an affidavit of merit must opine as to actual or proximate "causation," we would have to read that requirement into the statute. There are only two subsections where a causation requirement could possibly be found—either in NRS 41A.071(1) or in NRS 41A.071(4)—so we will address each in turn.[11]

To satisfy NRS 41A.071(1), an affidavit must "[s]upport[ ]" the allegations in the action. St. Rose-Siena and Sage Creek contend that an expert affidavit cannot support a wrongful death claim within the meaning of NRS 41A.071(1) unless it offers an opinion regarding causation. We disagree. In *Zohar v. Zbiegien*, the Nevada Supreme Court recognized that the support requirement "is ambiguous because it may reasonably be interpreted as merely providing some substantiation or foundation for the underlying facts within the complaint, or it may also be interpreted to require that the affidavit corroborate every fact within the complaint." 130 Nev. 733, 737, 334 P.3d 402, 405 (2014). After finding that NRS 41A.071's support requirement is ambiguous, the court looked to the legislative history of the statute. *Id.*

The supreme court observed that NRS 41A.071 "was enacted to deter baseless medical malpractice litigation, fast track medical malpractice cases, and encourage doctors to practice in Nevada while also respecting the injured plaintiff's right to litigate his or her case and receive full compensation for his or her injuries." *Id.* at 738, 334 P.3d at 405-06.

---

practiced 'in an area that is substantially similar to the type of practice engaged in at the time of the alleged professional negligence.'").

[11]A causation requirement cannot be found in NRS 41A.071(3), which simply requires identification of the negligent provider of health care.

But because the legislative history of the statute did not reveal the "precise level of specificity" necessary for an affidavit to "support" the allegations of a medical malpractice claim, the court chose "to construe the statute in a manner that conforms to reason and public policy" while balancing the interests of both health care providers and injured patients. *Id.* at 738, 334 P.3d at 406.

As a result, the supreme court rejected the notion that an affidavit of merit must "independently state every fact required to demonstrate a cause of action for medical malpractice." *Id.* at 739, 334 P.3d at 406. Rather than isolating and subjecting the affidavit to hyper technical scrutiny, "district court[s] should read a medical malpractice complaint and affidavit of merit together when determining whether the affidavit meets the requirements of NRS 41A.071." *Id.* at 735, 334 P.3d at 403.

Reviewing the complaint in *Zohar* (which alleged specific conduct by individual hospital employees) alongside the expert affidavit, which opined that "the medical staff in the emergency department of [the hospital] *breached the standard of care* in their treatment of [the injured patient] through the inappropriately tight application of a wound dressing and/or bandage," the supreme court deemed the affidavit sufficient to satisfy the support requirement of NRS 41A.071. *Id.* at 741, 334 P.3d at 407 (emphasis added). The supreme court's analysis demonstrates that an affidavit of merit need not separately address causation and recite each of the other essential elements of a particular claim to satisfy the support requirement of NRS 41A.071. Rather, an affidavit of merit can adequately support a complaint's allegations of professional negligence when it opines

as to the professional standard of care and the breach of that standard of care.[12]

Next, we must examine NRS 41A.071(4) to determine if that section requires an affidavit of merit to address causation. To comply with NRS 41A.071(4), an affidavit must identify the "specific act or acts of alleged negligence" engaged in by each defendant. Yet, unlike the support requirement in NRS 41A.071(1), the language of NRS 41A.071(4) is *not* ambiguous. First, we note that this subsection refers to an "act or acts" of negligence as opposed to a "claim or claims" of negligence. Even though causation is an *element* of a negligence claim, causation is not necessary to establish that an *act* was, in and of itself, negligent. *Compare Element, Black's Law Dictionary* (11th ed. 2019) (defining an "element" as "[a] constituent part of a claim that must be proved for the claim to succeed"), *with Negligence, Black's Law Dictionary* (11th ed. 2019) (defining "negligence," in relevant part, as "[t]he failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation"). To specify an *act* of negligence, one need only describe the act that breached the duty of care; one need not demonstrate the consequences of that act.

Additionally, while NRS 41A.071(4) generically refers to acts of "negligence," the statute's prefatory language clarifies that the type of negligence at issue is "professional negligence" as expressly defined in NRS 41A.015. *See Nev. Pub. Emps. Ret. Bd. v. Smith*, 129 Nev. 618, 627, 310

---

[12]We note that, although NRS 41A.071 was amended in 2015 after the decision in *Zohar*, those amendments did not substantively alter the support requirement. 2015 Nev. Stat., ch. 439, § 6, at 2527 (effective June 9, 2015).

P.3d 560, 566 (2013) ("A statute's express definition of a term controls the construction of that term no matter where the term appears in the statute." (quoting *Williams v. Clark Cty. Dist. Attorney*, 118 Nev. 473, 485, 50 P.3d 536, 544 (2002))).

NRS 41A.015 provides that, for purposes of NRS Chapter 41A, "'[p]rofessional negligence' means the failure of a provider of health care, in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances by similarly trained and experienced providers of health care." While the statutory definition of "professional negligence" incorporates the concepts of both duty of care and breach, it *does not* include the concepts of actual or legal causation found in caselaw describing the elements of negligence claims. *Cf. Perez v. Las Vegas Med. Ctr.*, 107 Nev. 1, 4, 805 P.2d 589, 590-91 (1991) ("To prevail on a negligence theory, the plaintiff generally must show that: (1) the defendant had a duty to exercise due care towards the plaintiff; (2) the defendant breached the duty; (3) the breach was an *actual* cause of the plaintiff's injury; (4) the breach was the *proximate* cause of the injury; and (5) the plaintiff suffered damage."). Thus, read in context, the term "negligence" in NRS 41A.071(4) means "professional negligence" as defined in NRS 41A.015, rather than a cause of action for negligence as more broadly defined under common law. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 225, 228 (2012) (stating that "[d]efinition sections and interpretation clauses are to be carefully followed" and "[i]t is very rare that a defined meaning can be replaced with another permissible meaning of the word on the basis of other textual indications; the definition is virtually conclusive").

The 2015 amendment to the definition of "professional negligence" underscores that the Legislature did not intend for the affidavit requirement in NRS 41A.071(4) to include actual or proximate causation. The prior version of NRS 41A.015 was enacted pursuant to a ballot initiative in 2004 and defined "professional negligence" as "a negligent act or omission to act by a provider of health care in the rendering of professional services, *which act or omission is the proximate cause of a personal injury or wrongful death.*" Nevada Ballot Questions 2004, Nevada Secretary of State, Question No. 3 (emphasis added). However, as a result of the 2015 amendment, the Legislature removed all references to causation from this definition and, at the same time, added the language in NRS 41A.071(4). *See* 2015 Nev. Stat., ch. 439, § 1.5, at 2526. We presume that these changes were intended to remove causation from the definition of "professional negligence" and the related affidavit requirements in NRS 41A.071. *See McKay v. Bd. of Supervisors*, 102 Nev. 644, 650, 730 P.2d 438, 442 (1986) ("It is ordinarily presumed that the legislature, by deleting an express portion of a law, intended a substantial change in the law.").

The language of NRS 41A.100, the res ipsa loquitur statute, further supports our reading of NRS 41A.071's affidavit requirement. *See State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 295, 995 P.2d 482, 486 (2000) ("Whenever possible, this court will interpret a rule or statute in harmony with other rules or statutes."). NRS 41A.100(1) sets forth five factual circumstances where a rebuttable presumption of professional negligence exists such that a plaintiff need not present expert testimony at trial. *See, e.g., Cummings v. Barber*, 136 Nev. 139, 144-45, 460 P.3d 963, 968 (2020) (concluding that an injured patient was not required to present expert testimony to withstand summary judgment where she

presented evidence giving rise to a presumption of negligence under NRS 41A.100(1)). However, NRS 41A.100(3) creates an exception to this rebuttable presumption when "a plaintiff submits an affidavit pursuant to NRS 41A.071, *or otherwise designates an expert witness to establish that the specific provider of health care deviated from the accepted standard of care.*" (Emphasis added.) By discussing the affidavit requirement in this way, the statute confirms that the affidavit requirement is concerned with the alleged deviation from the standard of care, not causation.

Notably, although causation is not within the statutory definition of professional negligence for purposes of the affidavit requirement, it remains an element that must be proven at trial. *See* NRS 41A.100(1) ("Liability for personal injury or death is not imposed upon any provider of health care based on alleged negligence in the performance of that care unless evidence . . . is presented to demonstrate the alleged deviation from the accepted standard of care in the specific circumstances of the case *and to prove causation of the alleged personal injury or death.*" (emphasis added)). When interpreting statutes, Nevada follows the maxim that "the mention of one thing implies the exclusion of another." *Rural Tel. Co. v. Pub. Utils. Comm'n*, 133 Nev. 387, 389, 398 P.3d 909, 911 (2017) (quoting *Sonia F. v. Eighth Judicial Dist. Court*, 125 Nev. 495, 499, 215 P.3d 705, 708 (2009)). The Legislature's express statutory inclusion of causation as an element of professional negligence claims that must be proven *at trial* further emphasizes the legislative intent to exclude causation from the affidavit requirements that must be established at the initial pleading stage.

In sum, we hold that NRS 41A.071 does not require an expert affidavit addressing legal or proximate causation in professional negligence

cases. Thus, Engelson's complaint alleges claims of wrongful death, and we conclude that the complaint was adequately pleaded and supported by an affidavit of merit. The district court erred in concluding otherwise and thus abused its discretion in denying reconsideration on that basis.

*The district court correctly concluded that Engelson's professional negligence claims against Sage Creek were subject to the requirements of NRS Chapter 41A*

Finally, Engelson contends that the district court abused its discretion in denying her motion for reconsideration after erroneously finding that Sage Creek was subject to the one-year statute of limitations set forth in NRS 41A.097(2). Engelson contends that, because Sage Creek is a "skilled nursing facility," and such facilities are not included in the definition of "provider of health care" set forth in NRS 41A.017, the claims against Sage Creek are not governed by NRS Chapter 41A. We disagree.

Skilled nursing facilities *may* be covered under NRS Chapter 41A when a complaint alleges liability against the facility based on the professional negligence of its nurses, who are "providers of health care" as defined in NRS 41A.017.[13] For instance, in *Estate of Curtis v. South Las*

---

[13]The version of NRS 41A.017 in effect at the relevant time defined "[p]rovider of health care" as

> a physician licensed pursuant to chapter 630 or 633 of NRS, physician assistant, dentist, licensed nurse, dispensing optician, optometrist, registered physical therapist, podiatric physician, licensed psychologist, chiropractic physician, doctor of Oriental medicine, holder of a license or a limited license issued under the provisions of chapter 653 of NRS, medical laboratory director or technician, licensed dietitian or a licensed hospital, clinic, surgery center, physicians' professional corporation

COURT OF APPEALS
OF
NEVADA

(O) 1947B

*Vegas Medical Investors, LLC*, the Nevada Supreme Court determined that NRS Chapter 41A applied to the plaintiff's allegation that a nursing home, through its nursing staff, failed to monitor its patient after administering morphine. 136 Nev. 350, 358, 466 P.3d 1263, 1270 (2020). In *Yafchak v. South Las Vegas Medical Investors, LLC*, the supreme court clarified that the reason NRS Chapter 41A applied to the professional negligence allegation in *Estate of Curtis* was because the plaintiff had "specifically asserted that the underlying negligence was committed by a nurse (a person included within NRS 41A.017's definition of a provider of health care)." 138 Nev., Adv. Op. 70, 519 P.3d 37, 40 (2022). In addition, the supreme court explained that a "nursing home facility may be vicariously liable for the professional negligence of a nursing home employee who is a provider of health care, in which case the nursing home would be subject to NRS Chapter 41A." *Id.*

Engelson's complaint alleged that Sage Creek's nurses and staff were negligent in providing nursing care to Meyer, including by failing to properly treat her sacral bedsore. Engelson further alleged that Sage Creek was vicariously liable under the doctrine of respondeat superior for the negligence of its nursing staff. Insofar as the complaint seeks to hold Sage Creek vicariously liable for the professional negligence of its nurses, we conclude that NRS Chapter 41A necessarily applies to those claims.[14]

---

or group practice that employs any such person and its employees.

[14]In light of our disposition, we need not determine whether all of Engelson's allegations against Sage Creek and St. Rose-Siena sound in professional negligence as opposed to general negligence, or whether the statute of limitations on Engelson's claims was tolled by Governor Sisolak's emergency directives regarding the COVID-19 pandemic. *See Miller v.*

(O) 1947B

Further, as we have noted, the district court erred in dismissing those claims as time-barred.

## CONCLUSION

The evidence in this case did not irrefutably demonstrate that Engelson or Meyer discovered or should have discovered the legal injury more than a year before Engelson filed her complaint. Therefore, the survivorship claims should not have been dismissed as untimely as a matter of law. Moreover, Engelson's complaint adequately pleaded wrongful death claims based on professional negligence and was timely filed within one year of Meyer's death. Although the district court found the attached affidavit of merit deficient because it did not opine as to the cause of Meyer's death, the affidavit was not required to address causation and adequately supported the allegations of professional negligence for purposes of NRS 41A.071. Accordingly, we reverse and remand this matter to the district court for further proceedings consistent with this opinion.

_____, J.
Westbrook

We concur:

_____, C.J.
Gibbons

_____, J.
Bulla

_____

*Burk*, 124 Nev. 579, 588-89, 188 P.3d 1112, 1118-19 (2008) (explaining that this court need not address issues that are unnecessary to resolve the case at bar).