140 Nev., Advance Opinion 55

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

BRITT HAYES, AN INDIVIDUAL,
Appellant,
vs.
JOHN MICHAEL WATSON, AN
INDIVIDUAL; AND GOMEZ, KOZAR,
MCELREATH AND SMITH,
PROFESSIONAL CORPORATION,
D/B/A WESTERN SURGICAL GROUP,
A NEVADA PROFESSIONAL
CORPORATION,
Respondents.

No. 85087-COA

FILED

AUG 29 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a final judgment and post-judgment order denying a motion for a new trial in a personal injury action. Second Judicial District Court, Washoe County; Kathleen M. Drakulich, Judge.

*Reversed and remanded.*

Laxalt Law Group, Ltd., and Steven Edward Guinn, Janice Jensen, and Ryan William Leary, Reno,
for Appellant.

Hutchison & Steffen, LLC, and Russell J. Carr, Jason D. Guinasso, and Joseph C. Reynolds, Reno; Law Offices of Eric R. Larsen and Reed J. Werner, Las Vegas,
for Respondents.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

24-31098

*OPINION*

By the Court, BULLA, J.:

A litigant is "entitled to a fair trial but not a perfect one." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984) (internal quotation marks omitted). In this opinion, we address when an imperfect trial becomes an unfair one warranting a new trial. To resolve this conundrum in this personal injury case, we embrace the doctrine of cumulative error, which recognizes that "multiple errors, which alone may not require reversal, may constitute reversible error if the cumulative effect of the errors resulted in an unfair trial." *Est. of Sumrall v. Singing River Health Sys.*, 303 So. 3d 798, 814 (Miss. Ct. App. 2020). The cumulative error doctrine is well established in Nevada's criminal jurisprudence, where "[t]he cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though [the] errors are harmless individually." *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) (quoting *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002)). In the civil setting, the Nevada Supreme Court has implicitly applied the doctrine, indicating that errors may be "coupled" with other errors to find reversible error—the benchmark of an unfair trial. *Holderer v. Aetna Cas. & Sur. Co.*, 114 Nev. 845, 851, 963 P.2d 459, 463 (1998).

While this court ordinarily would determine whether any given trial error requires reversal on appeal, this approach can lead to the erroneous conclusion that the individual errors were inconsequential and therefore do not warrant a new trial under NRCP 59(a)(1). In cases such as the one before us, however, it is only by considering the cumulative effect of these individual errors that the unfairness of a trial can be fully appreciated. We therefore expressly hold that the cumulative error doctrine

may be applied in civil cases to resolve whether a litigant was deprived of a fair trial. Applying the doctrine here, we consider the cumulative effect of the following alleged trial errors: (1) inappropriate restrictions on the use of an adverse party's videotaped deposition, (2) violations of the collateral source rule, and (3) the improper admission of undisclosed testimony of the designated corporate representative as an NRCP 30(b)(6) witness.[1] While we acknowledge that each individual error may not have warranted a new trial, the cumulative effect of these errors does—because an imperfect trial turned into an unfair one. Therefore, we reverse and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

Appellant Britt Hayes, a nurse, and respondent John Michael Watson, M.D. (Dr. Watson), a surgeon and employee of respondent Gomez, Kozar, McElreath and Smith, Professional Corporation, d/b/a Western Surgical Group (Western Surgical, and collectively with Dr. Watson, respondents) were members of a trauma team at Renown Regional Medical Center (Renown). Both were assigned to provide emergency care to a critically injured patient who was admitted to Renown. Upon the patient's admission, Dr. Watson angrily confronted a paramedic for treating the patient with Versed—a sedative—while in transit to the hospital, as this potentially hindered the trauma team's ability to accurately assess the patient's neurological condition. When assessing the patient, the trauma team rolled the patient to her side so the backboard—a flat medical device used to safely transport patients—could be removed from beneath her. Witnesses differ on exactly what happened next, but it is undisputed that

---

[1]We note that additional alleged trial errors were raised for our consideration on appeal, but we elect to address only three.

Dr. Watson dropped the backboard onto the floor, hitting Hayes's left foot resulting in a severe crush injury and requiring Hayes to undergo multiple surgeries.

Hayes ultimately filed a complaint for personal injury against respondents, asserting claims for negligence and assault and battery against Dr. Watson and negligent training, supervision, and retention against Western Surgical.[2]  Over the next three years, the parties propounded written discovery and completed party depositions, including the deposition of one of Western Surgical's NRCP 30(b)(6) witnesses, Myron Gomez, M.D. (Dr. Gomez), a trauma surgeon at Renown and a founding partner of Western Surgical.

In resolving the parties' pretrial motions in limine, the district court granted Hayes's motion to limit references to workers' compensation, except as permitted by NRS 616C.215(10) (providing mandatory jury instructions to address workers' compensation liens at trial), to avoid violating the collateral source rule.  But the court denied her motion to restrict the scope of Dr. Gomez's trial testimony to that given at his NRCP 30(b)(6) deposition.

In their untimely NRCP 16.1 pretrial disclosures, respondents designated Dr. Gomez as an NRCP 30(b)(6) witness for Western Surgical

---

[2]At the time of trial, only the negligence and assault and battery claims remained.  On appeal, Hayes does not challenge the jury's adverse verdict on her assault and battery claim.  Accordingly, this opinion only applies to her negligence claims. *See Powell v. Liberty Mut. Fire Ins. Co.*, 127 Nev. 156, 161 n.3, 252 P.3d 668, 672 n.3 (2011) (providing that issues not raised on appeal by the appellant are deemed waived).

but failed to identify the subject matters on which he would be testifying.[3] Hayes moved to strike the untimely disclosures and also filed separate objections. Hayes requested the same relief in her motion and objections: that the court prohibit respondents from using any improperly disclosed evidence or calling any improperly disclosed witness at trial. The district court denied Hayes's motion to strike but later in a separate order granted Hayes's objections to respondents' untimely pretrial disclosures based on their failure to respond, which effectively barred respondents from calling witnesses or moving to admit any of their proposed exhibits into evidence at trial.

Despite this order, respondents identified Dr. Gomez as an NRCP 30(b)(6) witness for Western Surgical in their trial statement but did not specifically disclose the subjects on which he was expected to testify. Respondents failed, however, to seek clarification from the district court regarding the court's inconsistent rulings on their ability to call witnesses until the morning of jury selection, when respondents sought to confirm their ability to call Dr. Gomez as a trial witness. While the district court admonished respondents that they should have timely addressed the inconsistent orders, the court ruled that Dr. Gomez would remain on the list of trial witnesses for the purpose of conducting voir dire, but the court reserved its decision on whether Dr. Gomez would be permitted to testify. Eventually, the court allowed him to testify on the second day of trial.

---

[3]Trial was scheduled for the August 24, 2021, trial stack, such that the parties' pretrial disclosures pursuant to NRCP 16.1(3) were due on July 23. Respondents' pretrial disclosures were filed four days late on July 27.

During the proceedings below, Hayes preserved multiple alleged trial errors. Hayes objected to the district court restricting her use of video clips from Dr. Watson's videotaped deposition for impeachment only, arguing NRCP 32(a)(3) permitted her to use his deposition for any purpose, including demonstrating Dr. Watson's demeanor. Hayes also objected multiple times to respondents' references to Hayes's workers' compensation benefits as violating both the collateral source rule and the district court's previous order restricting such references. Finally, although at trial Hayes did not specifically object to Dr. Gomez's testimony as being expert testimony, she had previously filed a motion in limine to prevent him from exceeding the scope of his deposition testimony, which was given in his representative capacity as an NRCP 30(b)(6) witness for Western Surgical.[4]

The trial concluded after six days. The jury returned a verdict in favor of respondents, declining to award damages to Hayes.

Hayes timely moved for a new trial under NRCP 59, arguing that not only was a new trial warranted on the grounds that the jury ignored the jury instructions regarding negligence, the district court improperly restricted her use of Dr. Watson's videotaped deposition, and also that there were numerous other "legal errors, irregularities, and [instances of attorney] misconduct [that] occurred prior to and during trial, which ultimately resulted in prejudice to, and an unfair trial" for Hayes. Thus, Hayes argued that a new trial was necessary under the doctrine of cumulative error, which she contended was "impliedly adopted" by the

---

[4]See BMW v. Roth, 127 Nev. 122, 140, 252 P.3d 649, 661 (2011) ("[A] fully briefed and definitively ruled on motion in limine on an evidentiary question preserves error for challenges to whether the district court properly ruled on the motion.").

supreme court in *Holderer*. The district court rejected Hayes's cumulative error argument by distinguishing *Holderer* as focusing on judicial misconduct and determining that even if the court erred, which it specifically found it had not, the individual errors did not rise to the level of those in *Holderer* to warrant reversal. Ultimately, however, the district court did not address the cumulative effect of those errors on the fairness of the trial. We do so now.

*ANALYSIS*

*Standard of review*

In civil actions, a litigant's substantial right to a "fair trial in a fair tribunal" is protected by the Due Process Clause of the United States and Nevada Constitutions. *See Sicor, Inc. v. Sacks*, 127 Nev. 896, 902, 266 P.3d 618, 622 (2011) (establishing that a civil litigant's right to a fair trial arises out of the Due Process Clause of the United States Constitution); *see also* U.S. Const. amend. XIV; Nev. Const. art. 1, § 8(2).

In Nevada, civil litigants who believe that their substantial rights have been infringed during a trial may seek recourse by moving the district court for a new trial. Under NRCP 59(a)(1), a district court may grant a new trial for any of the listed causes or grounds "materially affecting the substantial rights of the moving party," including:

> (A) irregularity in the proceedings of the court, jury, master, or adverse party or in any order of the court or master, or any abuse of discretion by which either party was prevented from having a fair trial;
>
> (B) misconduct of the jury or prevailing party;
>
> . . .
>
> (G) error in law occurring at the trial and objected to by the party making the motion.

We review a district court order denying a motion for a new trial for an abuse of discretion. *Michaels v. Pentair Water Pool & Spa*, 131 Nev. 804, 814, 357 P.3d 387, 395 (Ct. App. 2015). "In determining whether . . . an abuse of discretion occurred, this court must view the evidence and all inferences most favorably to the party against whom the motion is made." *Id.* The inquiry is fact dependent and requires this court to evaluate the alleged error in light of the entire record. *Carver v. El-Sabawi*, 121 Nev. 11, 14, 107 P.3d 1283, 1285 (2005).

*The doctrine of cumulative error*

Nevada's appellate courts have not formally recognized the cumulative error doctrine by name in a published opinion to reverse and grant a new trial.[5] However, the Nevada Supreme Court implicitly applied the doctrine in *Holderer* by holding that multiple errors, when considered together, warranted reversal of the appealed judgment, even when a single error alone may not have. 114 Nev. at 851, 963 P.2d at 463. Although *Holderer* involved different errors than the instant case, the supreme court did not suggest that the cumulative error doctrine should be limited to cases involving identical errors or judicial misconduct. Indeed, such a narrow application of the doctrine would make little sense because a variety of trial errors, considered together, may implicate the right to a fair trial.

Further, although the cumulative error doctrine has primarily developed in Nevada's criminal jurisprudence, the doctrine is a vital tool in

---

[5]*But see Nelson v. Heer*, 123 Nev. 217, 227 n.28, 163 P.3d 420, 427 n.28 (2007) (declining to address appellant's cumulative error argument because "the alleged errors in the context of the trial are without merit"); *FGA, Inc. v. Giglio*, 128 Nev. 271, 289 n.9, 278 P.3d 490, 501 n.9 (2012) ("Additionally, because we conclude that there was reversible error, we need not address FGA's cumulative-error argument.").

ensuring a fair trial in any context. After all, while the stakes in criminal and civil trials may differ substantially, civil litigants undoubtedly have a strong and constitutionally guaranteed interest in a fair trial to resolve their disputes. Accordingly, the cumulative error doctrine can be applied in both criminal and civil cases to protect a litigant's right to a fair trial.

Thus, when reviewing an order denying a motion for a new trial based on the cumulative error doctrine in the civil setting, we first consider whether "there were too many errors [and] the errors relate to relevant matters [that,] in the aggregate[,] rendered the trial unfair." *Pellicer ex rel. Pellicer v. St. Barnabas Hosp.*, 974 A.2d 1070, 1089 (N.J. 2009) (first alteration in original) (quoting *Diakamopoulos v. Monmouth Med. Ctr.*, 711 A.2d 321, 331 (N.J. Super. Ct. App. Div. 1998)). In our review, we accept that the otherwise incidental errors and irregularities of trial may, when evaluated as a whole, be "of such magnitude as to prejudice [a litigant's] rights or, in their aggregate [render] the trial unfair." *Id.* at 1088 (quoting *State v. Orecchio*, 106 A.2d 541, 542 (N.J. 1954)). Consequently, "[t]he cumulative effect of multiple harmless errors may amount to reversible error." *Error, Black's Law Dictionary* (12th ed. 2024) (defining "cumulative error"). Therefore, in applying the cumulative error doctrine in this case, we need not consider whether one error in isolation warrants reversal when "[p]rejudice may result from the cumulative effect of a combination of errors," and "[t]he fact that each of several errors would be harmless in isolation does not necessarily mean that the errors in the aggregate are harmless." 5 C.J.S. *Appeal and Error* § 982 (2019).

Our last step in the cumulative error analysis is to determine whether reversal and a new trial is warranted. We will reverse and remand for a new trial in a civil case "when it is apparent that justice requires a

reversal of a judgment because the presence of several seemingly inconsequential errors has made any resulting judgment inherently unreliable." *Herbert J. Thomas Mem'l Hosp. Ass'n v. Nutter*, 795 S.E.2d 530, 546-47 (W. Va. 2016); *see also Utah Chapter of Sierra Club v. Air Quality Bd.*, 226 P.3d 719, 736 (Utah 2009) (applying cumulative error where "the cumulative effect of the several errors undermines our confidence . . . that a fair trial was had" (quoting *State v. Kohl*, 999 P.2d 7, 15 (Utah 2000))). We now apply the cumulative error doctrine to this case.

*Analyzing the trial errors*

We first analyze three of Hayes's asserted errors to determine if error exists, for without the existence of two or more errors, there are no errors to cumulate. *See Nelson v. Heer*, 123 Nev. 217, 227 n.28, 163 P.3d 420, 427 n.28 (2007) (declining to apply cumulative error where no error exists). In doing so, we agree with Hayes that the following errors addressed below occurred during trial.

*The district court erred in restricting the use of video clips from Dr. Watson's videotaped deposition*

At trial, Hayes sought to use video clips from Dr. Watson's videotaped deposition alongside his live testimony for the purpose of challenging the reliability of his testimony through his demeanor. Hayes based her request on NRCP 32(a)(3), which provides that the deposition of an adverse party may be used "for any purpose." Respondents objected and argued that Hayes could not use Dr. Watson's deposition "for any purpose" because Dr. Watson was available to testify at trial. The district court agreed with respondents and found that Hayes could only use the deposition video clips for impeachment purposes. Consistent with that ruling, when Hayes sought to use the videotaped deposition to refresh Dr. Watson's recollection, the district court directed her to use the transcript instead.

Hayes was therefore unable to introduce any of the video clips from Dr. Watson's deposition at trial.[6]

In denying Hayes's motion for a new trial based on the court's restriction on her use of the video clips from Dr. Watson's deposition, the district court reasoned that even if it erred, it was harmless because Hayes was able to impeach Dr. Watson with the transcript and the jury was able to assess Dr. Watson's demeanor at trial. Specifically, the district court stated that the error, if any, would be harmless because "[s]ignificant evidence was presented to the jury about Dr. Watson's demeanor outside of the courtroom." The court's order also cited testimony that described instances of Dr. Watson yelling, throwing items, becoming angry, and using profanity.

On appeal, Hayes contends that the court abused its discretion by permitting the video clips from Dr. Watson's deposition only for impeachment purposes, arguing that NRCP 32(a)(3) plainly allowed her to use Dr. Watson's videotaped deposition "for any purpose." Respondents argue, as they did below, that NRCP 32(a)(3) required Dr. Watson to be unavailable before his deposition could be used for any purpose under the rule.[7]

---

[6]Hayes conceded at oral argument that the video clips were not made part of the record on appeal. Respondents do not challenge that the video clips would have demonstrated Dr. Watson's demeanor in a way that the deposition transcript does not, *see infra* n.7, thus their absence from the record does not impact our disposition. *See Engelson v. Dignity Health*, 139 Nev., Adv. Op. 58, 542 P.3d 430, 446 n.14 (Ct. App. 2023) (explaining that this court need not address issues that are unnecessary to resolve the case at bar).

[7]Respondents also argue that the admission of the video clips would have confused the jury or needlessly cumulated the evidence presented by

We initially examine whether the district court's decision to prohibit Hayes from using any video clips from Dr. Watson's deposition was an error. Generally, we review "a district court's decision to exclude [or admit] evidence for an abuse of discretion," and we will not disturb the district court's exercise of discretion "absent a showing of palpable abuse." *LVMPD v. Yeghiazarian*, 129 Nev. 760, 764-65, 312 P.3d 503, 507 (2013) (internal quotation marks omitted). However, we review the district court's interpretation and application of a court rule to exclude evidence de novo by considering the rule's plain language, here NRCP 32(a)(3). *Williams v. State, Dep't of Corr.*, 133 Nev. 594, 596, 402 P.3d 1260, 1262 (2017); *see also In re Est. of Sarge*, 134 Nev. 866, 868, 432 P.3d 718, 721 (2018) (holding that this court applies the rules of statutory interpretation when interpreting the Nevada Rules of Civil Procedure).

NRCP 32(a)(3) states that, "[a]n adverse party may use for any purpose the deposition of a party or anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6) or 31(a)(3)." Based on the plain language of the rule, we reject the contention that a party must be unavailable, as NRCP 32(a) does not state on its face, nor do respondents cite any supporting authority or cogently argue, that a

---

Dr. Watson's trial testimony. Because the district court did not rule on these issues below, we need not address them on appeal. *See 9352 Cranesbill Tr. v. Wells Fargo Bank, N.A.*, 136 Nev. 76, 81-82, 459 P.3d 227, 232 (2020) (declining to address an issue that the district court did not resolve). Further, respondents do not otherwise argue on appeal why the video clips would be inadmissible under our evidentiary rules. *See Engelson*, 139 Nev., Adv. Op. 58, 542 P.3d at 446 n.14. Thus, respondents have waived any remaining arguments regarding the admissibility of the video clips Hayes sought to introduce. *See Powell*, 127 Nev. at 161 n.3, 252 P.3d at 672 n.3.

party deponent must be unavailable in order to use the deponent's deposition at trial for any purpose. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (holding that the court need not consider claims that are not cogently argued or lack relevant authority).

In fairness, Nevada's appellate courts have not yet addressed the "for any purpose" language of NRCP 32(a)(3). Because the Nevada rule is identical to its federal counterpart, FRCP 32(a)(3), federal jurisprudence is persuasive authority. *See Nutton v. Sunset Station, Inc.*, 131 Nev. 279, 285 n.2, 357 P.3d 966, 970 n.2 (Ct. App. 2015) ("Where the Nevada Rules of Civil Procedure parallel the Federal Rules of Civil Procedure, rulings of federal courts interpreting the federal rules are persuasive authority for this court in applying the Nevada Rules.").

Federal courts have adopted a broad interpretation of the phrase "for any purpose," permitting a party to introduce the opposing party's deposition—including a videotaped deposition—or excerpts thereof, as evidence, regardless of the availability of the deponent. *See Pursche v. Atlas Scraper & Eng'g Co.*, 300 F.2d 467, 488 (9th Cir. 1961) (noting that the use of "for any purpose" "is but a tacit way of saying that the deposition can be used as original evidence regardless of the presence or absence of the deponent"); *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-00106-LRH-PAL, 2015 WL 5089779, at *3 (D. Nev. Aug. 27, 2015) (Order) (determining that the adverse parties' videotaped "depositions are allowable under [federal] Rule 32(a)(3) for any purpose, even if the witness is available and will testify at trial"). Thus, the term "for any purpose" has been broadly interpreted to mean that the deposition of a party may be introduced by an adverse party as part of its own case, regardless of whether the deponent is

available to testify. 10A Fed. Proc., L. Ed. § 26:465 (2024). Consequently, it is "erroneous for the trial judge to limit the use of a party's deposition to impeachment purposes." *Id.* (citing *Pingatore v. Montgomery Ward & Co.*, 419 F.2d 1138 (6th Cir. 1969)).

We agree with a broad interpretation of the language "for any purpose" and conclude that, in this instance, the district court abused its discretion in limiting Hayes's use of Dr. Watson's video deposition for impeachment purposes only, as Hayes should have been permitted to use the video for any purpose, including portraying and challenging Dr. Watson's demeanor. Although we recognize that video and stenographic depositions are treated similarly under the rules, courts have recognized benefits of using video as compared to reading a transcript.[8] *See* 58 Am. Jur. *Trials* 481 § 88 (2024) ("Deposition testimony which is presented via videotape is more effective than testimony read from a transcript."); *see also Slaughter v. Uponor, Inc.*, No. 2:08-CV-0223-RCJ-(GWF), 2010 WL 3781800, at *3 (D. Nev. Sept. 20, 2010) (Order) ("Videotape may provide insight into the demeanor and bearing of a witness, while a written transcript ensures consistency in the written record regarding statements made during deposition."). The core benefit of video depositions is that they allow the fact finder to view the deponent's demeanor. *See, e.g., Randazzo v. Ralphs Grocery Co.*, No. 2:14-cv-1042-GMN-GWF, 2015 WL 4506194, at *2-3 (D. Nev. July 23, 2015) (Order) (declining to exclude a video deposition

---

[8]We note that a deposition may be taken by traditional stenographic means or by any other means, such as audiovisual. NRCP 30(b)(3)(A). Thus, NRCP 32(a) applies in determining how Dr. Watson's videotaped deposition could be used at trial.

of a plaintiff in part because "the visible manner and demeanor of a witness are important factors in determining the witness'[s] credibility").

At trial Hayes indicated that she did not intend to play the entire videotaped deposition, but rather planned to only use selected video clips prepared in advance of trial to demonstrate Dr. Watson's demeanor, which may, in certain circumstances, constitute admissible evidence. *See, e.g., Cox v. Copperfield*, 138 Nev. 235, 240, 507 P.3d 1216, 1223 (2022) (recognizing that "[a] party's appearance, demeanor or nontestimonial behavior in court may constitute evidence on matters at issue in the case" (alteration in original) (quoting Hon. Robert E. Jones et al., *Rutter Group Practice Guide: Federal Civil Trials and Evidence* ¶ 8:364, at SC-34 (Supp. 2021))).[9]

Because a deponent's viewed demeanor may provide a clearer indication of a witness's reliability than "the literal meaning of his words," *United States v. Yida*, 498 F.3d 945, 951 (9th Cir. 2007), we cannot say that the district court's refusal to allow Hayes to use video clips of Dr. Watson's deposition did not prejudice Hayes's ability to present her case. This is especially true as Dr. Watson's demeanor was at issue, and the jury did not have the opportunity to review the whole of Hayes's case, particularly as it related to Dr. Watson's demeanor. Further, the district court also should

---

[9]*See also generally* NRCP 30(c)(1) ("The examination and cross-examination of a deponent proceed as they would at trial under the Nevada law of evidence, except NRS 47.040-47.080 and NRS 50.155."); *see also Coyote Springs Inv., LLC v. Eighth Jud. Dist. Ct.*, 131 Nev. 140, 146, 347 P.3d 267, 271 (2015) (recognizing that one purpose of NRCP 30(c) is "to protect the underlying purposes of deposition rules, which include eliciting the facts of a case before trial, evening the playing field, and obtaining testimony before the witness's recollection has been altered by . . . the helpful suggestions of lawyers" (internal quotation marks omitted)).

have permitted Hayes to use the video clips to refresh Dr. Watson's recollection. Because the district court only permitted Hayes to use the video clips for impeachment, the district court erred in restricting Hayes's use of Dr. Watson's videotaped deposition under NRCP 32(a)(3).

> *The district court's failure to rule on Hayes's objection during closing argument to counsel's improper reference to workers' compensation violating the collateral source rule constituted error*

We next determine if counsel's alleged improper references to workers' compensation violated the collateral source rule resulting in error. Our review of the record shows that respondents' counsel mentioned workers' compensation at least 20 times during the trial, many of which Hayes objected to and the district court sustained. While we could consider the cumulative effect of multiple instances of attorney misconduct, *cf. Valdez*, 124 Nev. at 1197-98, 196 P.3d at 482 (recognizing multiple instances of prosecutorial misconduct may be cumulated), we need not do so here. Instead, we elect to address one instance of attorney misconduct and cumulate it with the other preserved errors. *See Rookstool v. Eaton*, 457 P.3d 1144, 1149 (Wash. Ct. App. 2020) (declining to treat "each and every objectionable statement of counsel as a separate misconduct claim").

The one instance of attorney misconduct we focus on occurred during closing argument where counsel improperly referenced workers' compensation violating the collateral source rule[10] by arguing that "[Hayes]

---

[10]We acknowledge at least one additional instance of alleged attorney misconduct occurred during closing argument where counsel stated that "[y]ou heard [Hayes's] counsel argue to you that the workers' compensation lien amount is not relevant and should be disregarded, but the Court allowed it to come into evidence, so obviously it is relevant and should be considered by you in reaching your decision." This arguably violated the collateral source rule by highlighting the payments Hayes received from

was not satisfied with the letter or the verbal apology [from Dr. Watson]. She was not satisfied that workers' compensation was paying for her medical bills." And although Hayes objected based on counsel's failure to abide by the district court's order restricting references to workers' compensation so as not to violate the collateral source rule, the district court only responded with "[m]ove on. Thank you." The court neither expressly ruled on the objection nor gave any further admonishment to counsel or a curative instruction to the jury related to this objection.

In its order denying Hayes's motion for a new trial based on attorney misconduct, the district court found that the alleged instances of attorney misconduct related to improper references to workers' compensation were not extreme. The court also found that Hayes failed to demonstrate how the court's subsequent admonishment, which directed the jury to refer to the applicable jury instructions, was insufficient to cure any alleged violation of the collateral source rule.

Although the abuse of discretion standard applies to the order granting or denying a new trial, *Michaels*, 131 Nev. at 814, 357 P.3d at 395, de novo review applies to the issue of whether attorney misconduct occurred, *Grosjean v. Imperial Palace, Inc.*, 125 Nev. 349, 364, 212 P.3d 1068, 1078 (2009). In determining whether a new trial for attorney misconduct is warranted, this court must first determine whether

---

workers' compensation and suggesting that the payments were relevant to the jury's decision in awarding compensation, which was inconsistent with the jury instructions. Although the district court instructed the jury to review the applicable jury instructions on workers' compensation, which may have had a curative effect, we cannot say that counsel's misstatement of the law did not have some prejudicial effect considering the other error addressed above.

misconduct occurred. *Michaels*, 131 Nev. at 815, 357 P.3d at 395. The legal standard under which alleged misconduct is reviewed depends on whether the moving party made a timely objection at trial. *Lioce v. Cohen*, 124 Nev. 1, 17-19, 174 P.3d 970, 980-82 (2008). Additionally, an attorney's violation of an order in limine may constitute attorney misconduct if the order is specific, the violation is clear, and unfair prejudice is shown. *BMW v. Roth*, 127 Nev. 122, 126, 252 P.3d 649, 652 (2011).

Here, the district court's order granting Hayes's motion in limine recognized that "evidence concerning collateral source payments is inadmissible," citing *Proctor v. Castelletti*, 112 Nev. 88, 90, 911 P.2d 853, 854 (1996) ("We now adopt a *per se* rule barring the admission of a collateral source of payment for an injury into evidence for any purpose."). However, the court's order also stated that both parties acknowledged that "Nevada recognizes an exception to the collateral source rule for workers' compensation payments." Thus, it ordered the parties to adhere to NRS 616C.215(10), which establishes a limited exception to the collateral source rule for introducing workers' compensation payments, and stated it would instruct the jury as required by that statute.

We acknowledge that throughout the trial, the district court sustained many of Hayes's objections to the improper references to workers' compensation. Unfortunately, the court did not expressly rule on the objection concerning the improper reference to workers' compensation made during closing argument which implied that Hayes had already been compensated for her injury by workers' compensation and was dissatisfied. As the Nevada Supreme Court explained in *Cramer v. Peavy*, 116 Nev. 575, 581, 3 P.3d 665, 669 (2000), "NRS 616C.215(10) cannot be used by the defense to imply that the plaintiff has already been compensated, will

receive a double recovery if awarded a judgment[,] or has overcharged [workers' compensation]."

While we understand that over the course of a six-day trial this one instance may not have appeared to the district court to be a sufficient basis to grant a new trial, courts should be mindful that a violation of the collateral source rule "inevitably prejudices the jury because it greatly increases the likelihood that a jury will reduce a plaintiff's award of damages because it knows the plaintiff is already receiving compensation." *Proctor*, 112 Nev. at 90, 911 P.2d at 854. Therefore, we conclude that the district court erred in failing to expressly and favorably rule on Hayes's objection. Further, the court's direction to "move on" was insufficient to ameliorate the prejudice from counsel's statement. Finally, the district court should have recognized the overall impact of this error when deciding the motion for a new trial. *See Lioce*, 124 Nev. at 19, 174 P. 3d at 981 (providing that "the district court shall give great weight to the fact that single instances of improper conduct that could have been cured by objection and admonishment might not be curable when the improper conduct is repeated or persistent").

*The district court erred in allowing Dr. Gomez to testify beyond the scope of his NRCP 30(b)(6) deposition testimony*

The district court also erred in allowing Dr. Gomez to testify beyond the scope of his NRCP 30(b)(6) deposition testimony. During discovery, Smith served an NRCP 30(b)(6) deposition notice on Western Surgical. The notice identified "[t]he standard procedure for the removal of backboards beneath trauma patients" as one of the topics for examination. In response to Smith's NRCP 30(b)(6) notice, Western Surgical designated Dr. Gomez to testify on its behalf.

On direct examination, as part of their case-in-chief, respondents asked Dr. Gomez, "Are you aware of any trauma surgeons at Renown that *don't* drop the backboard on the floor?" (Emphasis added.) Dr. Gomez answered, "No. As I said before, you know, generally speaking, I think *the standard* is that the backboard gets close enough to the floor and, and it's, put down on the floor. It's dropped on the floor. Perhaps just an inch or two, but that's what happens." (Emphasis added.)

On cross-examination, Hayes attempted to impeach Dr. Gomez with his deposition testimony. Specifically, Hayes attempted to clarify that at his deposition, in his representative capacity as an NRCP 30(b)(6) deponent, Dr. Gomez indicated that there was no "standard" for placing a backboard after it has been removed, but instead only testified that the backboard was "placed somewhere." While he agreed that during his deposition he did not say anything about the standard for discarding a backboard, he testified at trial that counsel had not asked him in "enough detail about the process" at his deposition.

In its order denying Hayes's motion for a new trial, the district court found that Hayes was not prejudiced by its decision to allow Dr. Gomez to testify because: (1) Hayes deposed Dr. Gomez in May 2019, two years before the matter went to trial; (2) the court found good cause to amend its pretrial order granting Hayes's objections to respondents' untimely pretrial disclosures, and Hayes was not prevented from calling Dr. Gomez in her case-in-chief; and (3) Dr. Gomez was never identified as an NRCP 30(b)(6) witness and, inferentially, he could not be expected to testify on behalf of Western Surgical.

Hayes argues on appeal that Dr. Gomez's trial testimony was not harmless because it constituted improper expert testimony as to the

standard of care for discarding a backboard that had not been previously disclosed. Respondents deny that Dr. Gomez provided expert witness testimony and instead assert that he testified consistently with his deposition testimony, which could not have been considered a surprise to Hayes as she had the opportunity to depose him.

As a preliminary matter, it appears that the parties agree that Dr. Gomez was designated as an NRCP 30(b)(6) witness and deposed in that capacity. A review of the record contains not only the notice of Dr. Gomez's NRCP 30(b)(6) deposition, but also his deposition transcript wherein Dr. Gomez acknowledged that he was giving answers on behalf of Western Surgical, and not in his individual capacity. Hayes's motion in limine specifically identified Dr. Gomez as one of respondents' NRCP 30(b)(6) deponents, and respondents' trial statement also identified Dr. Gomez as one of Western Surgical's NRCP 30(b)(6) witnesses, providing further support of Dr. Gomez's role as a corporate representative. However, in its order denying Hayes's motion for a new trial, the district court found that Dr. Gomez did not appear at his deposition as an NRCP 30(b)(6) witness, nor did respondents identify him as such. These findings are clearly erroneous. And such factual errors could constitute an abuse of discretion. *See MB Am., Inc. v. Alaska Pac. Leasing Co.*, 132 Nev. 78, 88, 367 P.3d 1286, 1292 (2016) ("An abuse of discretion can occur when the district court bases its decision on a clearly erroneous factual determination . . . .").

In determining whether the district court abused its discretion or erred in permitting Dr. Gomez, who was designated as an NRCP 30(b)(6) witness, to testify at trial beyond the scope of his deposition, we first explore the nature of an NRCP 30(b)(6) deposition. The overarching purpose of a Rule 30(b)(6) deposition is to "streamline the discovery process" by allowing

a corporation to designate a witness to speak on its behalf thereby avoiding multiple depositions of corporate employees. *Alvarado-Herrera v. Acuity*, 344 F.R.D. 103, 106-07 (D. Nev. 2023).

Generally, the party serving an NRCP 30(b)(6) deposition notice on an organization, "must describe with reasonable particularity the matters for examination." *Id.* Upon receiving the notice, the organization is required to designate "one or more officers, directors, or managing agents" to testify on its behalf. Under NRCP 30(b)(6), the designated deponent for the organization must "testify about information known or reasonably available to the organization." Further, "a [Rule] 30(b)(6) witness testifies on behalf of the entity for whom the witness appears and, therefore, binds the entity with that testimony" and a "corporation has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable in order to provide binding answers on behalf of the corporation." *Layton v. Green Valley Vill. Comm. Ass'n*, Case No. 2:14-cv-1347-GMN-EJY, 2024 WL 1446185, *3 (D. Nev. Mar. 26, 2024) (Order) (internal quotation marks omitted). Further, an organization that discloses an NRCP 30(b)(6) witness in accordance with NRCP 16.1 remains under a duty to supplement its disclosure when appropriate. *See* NRCP 26(e)(1) ("A party who has made a disclosure under Rule 16.1 . . . is under a duty to timely supplement or correct a disclosure or response to include information thereafter acquired if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional information or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.").

During his deposition, Dr. Gomez denied preparing for his testimony and acknowledged that he had only briefly reviewed the NRCP

30(b)(6) notice. When Hayes asked questions regarding the standard procedure for removing a backboard, Dr. Gomez failed to mention any standard procedure, instead indicating that the backboard could be placed "somewhere" and "occasionally" it might be dropped on the floor and fall on someone's foot. "Occasionally" does not constitute a standard procedure. *See Occasionally, Merriam-Webster's Dictionary* (11th ed. 2020) (defining occasionally as something that happens "on occasion" or "now and then"). But at trial, despite the lack of prior discussion, Dr. Gomez identified a *standard* for dropping the backboard onto the floor, which was consistent with Dr. Watson's testimony as to how he discarded the backboard that injured Hayes. Therefore, Dr. Gomez's trial testimony supported respondents' position that Dr. Watson met the standard when he discarded the backboard by dropping it to the floor in a trauma setting.

We conclude that it was an abuse of discretion to permit Dr. Gomez to give this trial testimony, which was beyond the scope of his deposition testimony, when respondents failed to supplement their NRCP 16.1 disclosures as required under NRCP 26(e). Specifically, respondents never served a required supplemental disclosure that Dr. Gomez would be testifying at trial about the "standard" for discarding a backboard.

We need not decide whether Dr. Gomez's testimony qualified as "expert testimony" because he should have been prepared to give his testimony regarding the standard for removing a backboard at the time of his deposition pursuant to the NRCP 30(b)(6) notice.[11] Thus, the district

---

[11]We note that in the district court's order denying Hayes's motion in limine on this issue the court expressed concern that there was no legal authority establishing that Dr. Gomez was required to testify consistently with his deposition testimony. While the district court's reasoning was not

court erred in permitting Dr. Gomez's expanded trial testimony because it exceeded the scope of his deposition testimony and was not timely disclosed in a supplement as required.

*The cumulative effect of the trial errors resulted in an unfair trial for Hayes*

We now consider whether the cumulative effect of the above trial errors materially affected Hayes's substantial right to a fair trial such that a new trial should have been granted. The application of the cumulative error doctrine in this case provides a pathway to ensure that a trial is fair despite its imperfections. In applying the doctrine to this case, we conclude that the errors raised by Hayes—when cumulated—materially affected Hayes's substantial right to a fair trial. *Pellicer*, 974 A.2d at 1089. The jury should have been able to assess Dr. Watson's demeanor by seeing the video clips, which may have provided a clearer indication of his reliability as a witness than "the literal meaning of his words." *Yida*, 498 F.3d at 951. The district court should have sustained Hayes's objection during closing argument, and a curative instruction should have been given that workers' compensation does not preclude recovery in a tort action regardless of the largesse of the lien amount. *Cramer*, 116 at 531, 3 P.3d at 669. The jury should not have been able to consider trial testimony from an NRCP 30(b)(6) witness regarding the standard for discarding a backboard, as that testimony was not disclosed under NRCP 26(e) as required. Thus, we conclude that the cumulative effect of these errors "undermines our confidence" that Hayes received a fair trial, making the judgment

necessarily incorrect, this was not a mere "inconsistency" but new testimony on a topic area from an NRCP 30(b)(6) notice that should have either been disclosed at deposition or timely supplemented under NRCP 26(e)(1).

inherently unreliable. *Pellicer*, 974 A.2d at 1089; *see also Utah Chapter of Sierra Club*, 226 P.3d at 736.[12]

## CONCLUSION

"A trial is a dynamic organism which can be desensitized by too much error or too much curative instruction." *Diakamopoulos v. Monmouth Med. Ctr.*, 711 A.2d 321, 331 (N.J. Super. Ct. App. Div. 1998). Applying the cumulative error doctrine to evaluate the fairness of the trial in this case, we conclude that "too much error" occurred, causing an imperfect trial to become an unfair one. *Id.* Therefore, the district court erred in failing to grant Hayes a new trial under NRCP 59(a). Accordingly, we reverse and remand for a new trial.

_____, J.
Bulla

We concur:

_____, C.J.
Gibbons

_____, J.
Westbrook

---

[12]In light of our disposition, we need not consider Hayes's argument that the jury failed to follow the jury instructions on negligence, or any of the other errors raised. *See Engelson*, 139 Nev., Adv. Op. 58, 542 P.3d at 446 n.14.